BOLIN, Justice.[1]
This appeal and cross-appeal follow the entry of summary judgment in favor of the Birmingham-Jefferson County Transit Authority and Amalgamated Transit Union Local 725 Employees Contributory Retirement Plan (“the Plan”), the Birmingham-Jefferson County Transit Authority Retirement Allowance Committee (“the Committee”), and individual members of the Committee. We dismiss the appeal and cross-appeal as being from a nonfinal judgment.
The Birmingham-Jefferson County Transit Authority (“the Authority”) is a public corporation created by statute and charged with operating a public-transportation system in the City of Birmingham and in Jefferson County. See § 11^9B-1 et seq., Ala.Code 1975 (providing for the establishment of transportation systems in Class 1 municipalities). Amalgamated Transit Union Local 725 (“the Union”) is a labor organization and the exclusive collective-bargaining representative of certain employees of the Authority. The Authority and the Union have been parties to a series of collective-bargaining agreements (hereinafter “CBAs”) establishing the terms and conditions of employment for bus operators and maintenance employees represented by the Union, including retirement benefits set out in the Plan.
The Plan is a qualified employee retirement plan within the meaning of § 401(a) of the Internal Revenue Code. The Plan is administered by the Committee. The Committee consists of four members, two of whom are appointed by the Authority and two of whom are appointed by the Union. Benefits paid pursuant to the Plan are funded through the Birmingham-Jefferson County Transit Authority Contributory Retirement Trust (“the Trust”). The Plan is a defined-benefit plan. A defined-benefit plan bases benefits on factors such as years of service, compensation received, and date of retirement. The Trust is funded primarily through contributions by employers and employees.
In October 1996, the Authority notified the Union that it planned to assign management of the Authority’s day-to-day operations to Ryder Systems, Inc. (“Ryder”),[2] and to terminate the existing CBA, which was set to expire on January 3, 1997. At that time, the Plan provided, with regard to early retirement, as follows:
“9.1(a) Any employee may retire voluntarily at any time after he has at *909 tained the age of fifty five (55) years, and shall have completed 80 years service with the [Authority], and upon such early retirement shall be entitled to an immediate benefit computed as of the date of his early retirement with no actuarial reduction because of his age being less than 65 years.”
The Union, the Authority, and Ryder attempted to negotiate a new CBA, but in January 1997 Ryder declared that the parties had reached an impasse in bargaining and unilaterally implemented the terms of its last proposal to the Union. The terms included discontinuing the Plan, discontinuing any contributions to the Plan, and seeking to implement a 401(k) retirement plan for those employees of the Authority covered by the previous CBA. During this same time, the employees of the Authority were discharged and most were rehired by Ryder. No employer or employee contributions were made to the Trust from 1997 to 2000.
In 1997, the president of the Union, who was also chairman of the Committee, discussed with Amalgamated Transit Union International whether employees who were fully vested in the Plan could receive early-retirement benefits (because no contributions were being placed into the Trust) and, at the same time, be employed by Ryder. In 1997, both Marcus Fuller and Joseph Mitchell were vested under the terms of the Plan and sought early-retirement benefits under the Plan while they were employed by Ryder. The Committee unanimously approved their applications for early-retirement benefits.
Shortly after Ryder announced its decision to discontinue the Plan, the Union asserted that Ryder was obligated to submit the dispute between it and Ryder over the unresolved bargaining to “interest arbitration” and filed a grievance to that effect with the Board of Arbitration in accordance with the last CBA that had been in existence between the Authority and the Union. On July 27, 1998, the Board of Arbitration sustained the Union’s grievance and determined that, pursuant to the Urban Mass Transportation Act of 1964, 49 U.S.C. § 1601 et seq., neither the Authority nor Ryder could unilaterally implement new terms and conditions of employment. The Board of Arbitration ordered the restoration of the status quo retroactive to January 7, 1997, and ordered the parties to engage in interest arbitration to establish future terms and conditions of employment.
The Union and Ryder proceeded to interest arbitration, and on December 18, 1999, the Board of Arbitration accepted the Union’s proposal to continue the Plan and rejected the Authority’s and Ryder’s proposed implementation of a 401(k) retirement plan. The contributions from 1997 to 2000, required to fund the Plan, were placed in the Trust.
In December 2000, Tom Angelí, counsel for the Plan, notified the Committee that the early-retirement benefits paid to Fuller and Mitchell and other employees were illegal because the employees were ineligible to receive such benefits due to their employment with Ryder and that the benefits had to be repaid. From 1997 to 2000, Fuller had received $61,101.25 in early-retirement benefits and Mitchell had received $51,862.74.
Fuller retired in September 2002. The Committee reduced Fuller’s calculated benefits in order to account for the early-retirement benefits paid under the Plan while he was working for Ryder. The Committee reduced his monthly benefit by the actuarial equivalent of $61,101.25, which resulted in a monthly benefit of $1,222.33, $528.04 less than he would have received without the reduction. Mitchell subsequently retired and received a reduction in his monthly pension, which was the *910 actuarial equivalent of the $51,862.74 he received in early-retirement benefits from 1997 to 2000. Fuller and Mitchell filed grievances disputing their reductions in benefits, which were subsequently denied.
On June 9, 2005, Fuller and Mitchell (hereinafter collectively referred as “the employees”) sued the Authority, alleging two counts of breach of contract, conversion, breach of fiduciary duty, and bad faith and that the Authority should be stopped from reducing their benefits. Subsequently, the employees amended their complaint and dismissed the Authority and substituted the Committee and the Plan as defendants. On November 2, 2007, the employees amended their complaint a second time to add the individual members of the Committee as defendants. On April 22, 2008, the defendants filed an answer to the second amended complaint and asserted a counterclaim seeking immediate recoupment from the employees along with interest and attorney fees.
On April 30, 2008, the defendants filed a motion for a summary judgment, and the trial court set a hearing. On May 5, 2008, the employees sought written discovery from the defendants. On May 13, 2008, the employees moved to continue the summary-judgment hearing on the ground that they needed the responses to their discovery requests. On May 20, 2008, the trial court granted the motion to continue and set a hearing for August 15, 2008. On August 15, 2008, the trial court set another hearing on the summary-judgment motion for September 19, 2008, after counsel for the employees failed to appear at the August 15 hearing, and directed the employees to respond to the summary-judgment motion by September 12, 2008.
On September 12, 2008, the employees filed a motion to compel discovery. On September 16, 2008, the employees filed a motion to continue the hearing; that motion was never ruled on, and a hearing was held on September 19, 2008. Counsel for the employees did not appear for the summary-judgment hearing. On September 30, 2008, the trial court directed counsel to appear on October 17, 2008, to address the status of the case and the pending motion to compel. On October 15, 2008, the employees filed a motion to continue the October 17, 2008, hearing. Counsel did not appear at the October 17, 2008, hearing, which was held as scheduled. On October 21, 2008, the trial court denied the employees’ motion to compel and granted the defendants’ summary-judgment motion.
On November 20, 2008, the employees filed a motion to vacate the summary judgment, arguing that the defendants had failed to respond to discovery requests, that the responses they had given to discovery were incomplete, and that they had refused to provide access to material witnesses. On January 9, 2009, the trial court granted the employees’ motion, vacated the summary-judgment order, and allowed discovery, including the depositions of eight witnesses. On May 14, 2009, the employees filed a response to the defendants’ summary-judgment motion, attaching supporting documents.
On June 22, 2009, the defendants filed a reply to the employees’ response. On July 6, 2009, the trial court entered a summary judgment in favor of the defendants on the employees’ claims. The defendants’ counterclaim remained pending.
On August 17, 2009, the employees filed a motion seeking to have the trial court certify the summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. On August 24, 2009, the defendants filed a response to the employees’ motion, arguing that the case was not proper for Rule 54(b) certification because their counterclaim seeking immediate recoupment, interest, and attorney fees was still pending and the counterclaim and the employees’ *911 claims arose from the same facts and are so interrelated that they should not be further “‘piecemealed’ by permitting appeal of only the former before resolution of the latter.”
On October 26, 2009, the trial court granted the employees’ motion, certifying the judgment as final pursuant to Rule 54(b). On December 4, 2009, the employees appealed. The defendants filed a cross-appeal.
At the outset, we note that none of the parties argues on appeal that the trial court’s certification of its summary-judgment order as final under Rule 54(b) was inappropriate. However, jurisdictional matters, such as whether an order is final so as to support an appeal, are of such importance that an appellate court may take notice of them ex mero motu. Nunn v. Baker, 518 So.2d 711 (Ala.1987). Rule 54(b), Ala. R. Civ. P., allows a trial court, in appropriate instances, to “direct the entry of a final judgment as to one or more but fewer than all of the claims or parties.” With regard to subsection (b), the Committee Comments on 1973 Adoption to Rule 54 provide, in pertinent part:
“This subdivision regulates the relation of that joinder to the usual requirement, in Alabama as elsewhere, that appeal must be only from a final judgment, save in unusual circumstances. ... In general the rule adopts equity practice of a ‘split judgment.’ ... The rule provides that, in the absence of affirmative action by the judge, no decision is final until the entire case has been adjudicated. The one exception is that where the court has completely disposed of one of a number of claims, or one of multiple parties, and has made an express determination that there is no just reason for delay, the court may direct the entry of judgment on that claim or as to that party. The judgment so entered is a final judgment in all respects, and may be appealed .... ”
(Emphasis added.)
“ ‘Not every order has the requisite element of finality that can trigger the operation of Rule 54(b).’ ” Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 361 (Ala.2004) (quoting Goldome Credit Corp. v. Player, 869 So.2d 1146, 1147 (Ala.Civ.App.2003)(emphasis omitted)).
“It bears repeating, here, that ‘ “[c]er-tifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.” ’ State v. Lawhorn, 830 So.2d 720, 725 (Ala.2002)(quoting Baker v. Bennett, 644 So.2d 901, 903 (Ala.1994), citing in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala.1987)).
‘ “ ‘Appellate review in a piecemeal fashion is not favored.’ ” ’ Goldome Credit Corp. [v. Player, 869 So.2d 1146, 1148 (Ala.Civ.App.2003) Kquoting Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190, 192 (Ala.Civ.App.1999), quoting in turn Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala.Civ.App.1996)).”
Dzwonkowski, 892 So.2d at 363 (emphasis omitted).
In Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256 (Ala.2010), this Court discussed the five-factor analysis to be used in determining whether there is no just reason for delay under Rule 54(b). The Court explained:
“In considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay in entering a judgment, this Court has considered whether ‘the issues in the claim being certified and a claim that will remain pending in the trial court “ ‘are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.’ ” ’
*912 Schlarb [v. Lee], 955 So.2d [418,] 419-20 [ (Ala.2006) ] (quoting Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala.2002), quoting in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala.1987), and concluding that conversion and fraud claims were too intertwined with a pending breach-of-contract claim for Rule 54(b) certification when the propositions on which the appellant relied to support the claims were identical). See also Centennial Assocs. [u Guthrie], 20 So.3d [1277,] at 1281 [ (Ala.2009) ] (concluding that claims against an attorney certified as final under Rule 54(b) were too closely intertwined with pending claims against other defendants when the pending claims required ‘resolution of the same issue’ as issue pending on appeal); and Howard v. Allstate Ins. Co., 9 So.3d 1213, 1215 (Ala.2008) (concluding that the judgments on the claims against certain of the defendants had been improperly certified as final under Rule 54(b) because the pending claims against the remaining defendants depended upon the resolution of common issues).
“Additionally, in considering whether a trial court has exceeded its discretion in determining that there is no just reason for delay, several United States Courts of Appeals have expressly considered whether the resolution of claims that remain pending in the trial court may moot claims presented on appeal. In MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849 (4th Cir.2010), the United States Court of Appeals for the Fourth Circuit explained:
“ ‘In determining whether there is no just reason for delay in the entry of judgment, factors the district court should consider, if applicable, include: “ ‘ “(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.”
“ ‘Braswell [Shipyards, Inc. v. Beazer E., Inc.,] 2 F.3d [1331,] 1335-36 [ (4th Cir.1993) ] ... (quoting Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 364 (3d Cir.l975)[, overruled on other grounds by Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)]).’
“610 F.3d at 855.”
Rosenberg, 63 So.3d at 1263-64 (emphasis and footnotes omitted).
In Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala.1987), a bank sued Branch, seeking repayment of a promissory note. Branch counterclaimed, asserting that an agent of the bank had made a fraudulent misrepresentation upon which Branch had relied in executing the promissory note. The trial court entered a summary judgment in favor of the bank on its claim, but it refused to enter a summary judgment in favor of the bank on Branch’s counterclaim. The trial court certified the summary judgment on the bank’s claim as final pursuant to Rule 54(b), and, among his arguments on appeal, Branch asserted that the trial court had erred in certifying its judgment as final. This Court stated:
“The facts in this case, however, do not present the type of situation that *913 Rule 54(b) was intended to cover. The counterclaim asserted by Branch is based upon an alleged fraudulent representation by an agent of SouthTrust upon which Branch claims he relied in executing the promissory note. It therefore appears that the issues in the two claims in this ease are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.”
Branch, 514 So.2d at 1374.
In Winecoff v. Compass Bank, 854 So.2d 611 (Ala.Civ.App.2003), the Winecoffs redeemed two savings bonds at a bank, and the bank overpaid the amount actually due on those bonds. The bank then “set off,” or deducted, an amount from the Wine-coffs’ checking account as partial repayment of the overpayment on the bonds. 854 So.2d at 612. The Winecoffs sued the bank, alleging that the setoff was improper, and the bank counterclaimed, alleging that the setoff was proper and seeking the remainder of the amount it had overpaid the Winecoffs. The trial court entered a summary judgment in favor of the bank on the Winecoffs’ claims, and, although it noted that the bank’s counterclaim was still pending, the trial court certified its order as final pursuant to Rule 54(b). The Court of Civil Appeals determined that “the claims and the counterclaim each rested on the issue whether [the bank] could validly effect a setoff against the Winecoffs’ joint checking account.” Winecoff, 854 So.2d at 614. The Court of Civil Appeals held that the claims and the counterclaim were too closely intertwined to render the Rule 54(b) certification valid, and it dismissed the appeal as having been taken from a nonfinal judgment.
In the present case, the employees sued the defendants alleging breach of contract, conversion, breach of fiduciary duty, and bad faith and the application of the doctrine of estoppel arising out of the defendants’ recoupment of early-retirement benefits they claim the employees were not entitled to under the Plan. The defendants filed a counterclaim seeking immediate repayment from the employees of the benefits, interest, and attorney fees arising out of the payment of the early-retirement benefits based on their fiduciary duty to the Plan. The factual underpinnings of the adjudicated claims are the same as those of the unadjudicated counterclaim of the defendants. Spiegel v. Trustees of Tufts Coll, 843 F.2d 38, 45 (1st Cir.1988) (holding that an appeal from a judgment certified pursuant to Rule 54(b) was not appropriate where there is “substantial ... imbrication between the dismissed counts and the surviving count” or where “[t]he factual underpinnings of the adjudicated and nonadjudicated counts are ... inextricably intertwined”). The trial court’s resolution of the employees’ claims does not moot the defendants’ counterclaim because the trial court must decide whether immediate recoupment (less any amount already received through the actuarially reduced monthly benefits), interest, and attorney fees are owed the defendants for the early-retirement benefits received by the employees. The trial court will have to reconsider the facts relating to the recoupment of the benefits in determining the defendants’ counterclaim, including determining whether the defendants are entitled to immediate recoupment, interest, and attorney fees. The counterclaim is not a frivolous one because the Committee owes a fiduciary duty to all Plan participants and the Plan grants the Committee broad discretion in interpreting the Plan. Therefore, the trial court’s certification of finality under Rule 54(b) is ineffective, and, there being no final judgment, both the appeal and cross-appeal are dismissed for lack of jurisdiction.
*914 1090436 — APPEAL DISMISSED.
1091592 — APPEAL DISMISSED.
MOORE, C.J., and STUART, PARKER, MAIN, and WISE, JJ., concur.
MURDOCK, SHAW, and BRYAN, JJ., concur specially.

. This appeal and cross-appeal were mistakenly placed on the administrative docket by the Supreme Court’s clerk’s office in June 2010. They were assigned to Justice Bolin on October 22, 2013. We regret the delay in the issuance of a decision in these appeals.

. It appears that Ryder Systems, Inc., was later purchased by First Transit, Inc. The entity is sometimes referred to as Ryder/ATE, Inc., and the operations-management agreement is between the Authority and Ryder/ATE.