MURDOCK, Justice.
Douglas Ghee, as personal representative of the estate of Billy Fleming, deceased, appeals from an order of the Calhoun Circuit Court dismissing his wrongful-death claim against USAble Mutual Insurance Company d/b/a Blue Advantage Administrators of Arkansas ("Blue Advantage"). We dismiss this appeal as being from a nonfinal order.
I. Facts
Blue Advantage was the claims administrator for Fleming's self-funded employee-health-benefits plan, which Fleming received through his employment with Wal-Mart Stores, Inc. There is no dispute that the health-benefits plan falls under the auspices of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. That plan will be referred to hereinafter as "the ERISA plan."
Ghee filed a complaint in the Calhoun Circuit Court alleging a wrongful-death claim against Blue Advantage, among others, based on Fleming's death. The circuit court granted Blue Advantage's Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss Ghee's complaint against it based on federal preemption under ERISA, specifically based on 29 U.S.C. § 1144(a). The allegations in Ghee's complaint were pivotal to this determination; therefore, it is best to relay the facts exactly as alleged in the complaint:
"18. On June 11, 2013, [Fleming] presented to the [Northeast Alabama] RMC [Regional Medical Center] emergency department. According to records, he was complaining of constipation and abdominal pain that he rated as a 10 on a 10-point scale.
"19. [Fleming] was diagnosed with abdominal pain with constipation and fecal impaction.
"20. [Fleming] was admitted to the hospital.
"21. On June 12, 2013, a CT of [Fleming's] abdomen showed, according to a written report, a moderate amount of fecal material within [Fleming's] sigmoid colon and rectum.
"22. On June 14, 2013, Dr. Rosen attempted to perform a colonoscopy on [Fleming], but according to Dr. Rosen's notes, he was unable to pass the scope beyond 30 centimeters, and stated that, '[g]iven the marked severity of constipation, the inadequate colon prep despite multiple colon preparations, the patient would benefit [from] subtotal colectomy.'[1 ]
"23. On June 15, 2013, Dr. Crawford was consulted, and according to his notes, agreed that [Fleming] required a colectomy and scheduled the procedure for two weeks later as an outpatient procedure in order to give [Fleming's] colon an opportunity to flatten out.
"24. [Fleming] was discharged home from RMC on June 17, 2013.
"25. On July 2, 2013, [Fleming] visited Dr. Crawford as a followup at the Crawford *368 Clinic and was scheduled to undergo his colectomy on July 10, 2013.
"26. Dr. Crawford and/or the Crawford Clinic, according to its records, sought pre-approval for the surgery from [Blue Advantage] via CPT code 564.9, which is unspecified functional disorder of intestine.[2 ]
"27. On July 3, 2013, [Fleming] presented to RMC for his pre-anesthetic evaluation.
"28. On or about July 5, 2013, an agent of the Crawford Clinic called [Fleming] and informed him that he could not have the surgery because [Blue Advantage] had decided that a lower quality of care-continued non-surgical management-was more appropriate than the higher quality of care-surgery-that [Fleming] needed and that his surgeon felt was appropriate.
"29. [Fleming] and his family then had multiple conversations with agents of [Blue Advantage] in an unsuccessful attempt to convince the company that the higher quality of care (surgery, as recommended by [Fleming's] doctors) was the more appropriate course. Ultimately, an agent of [Blue Advantage] suggested to [Fleming] that he return to RMC in an attempt to convince hospital personnel and physicians to perform the surgery on an emergency basis.
"30. On the night of July 10, 2013 (after midnight so that the hospital records indicate a visit of July 11), [Fleming] returned to the RMC emergency department. According to records, he was complaining of severe abdominal pain.
"31. [Fleming] explained his history involving his prior admission and canceled surgery.
"32. A CT of [Fleming]'s abdomen showed, according to a written report, a moderate amount of retained stool throughout [Fleming's] colon.
"33. [Fleming] was seen and discharged that day (7/11/13) by Dr. Williams, D.O.
"34. On July 14, 2013, [Fleming] returned to the RMC emergency department and according to the records, complaining of severe abdominal pain and rectal bleeding.
"35. [Fleming] again reported his history involving his prior admission and canceled surgery.
"36. No diagnostic imaging was performed during this visit (7/14/13).
"37. [Fleming] was seen and discharged that day (7/14/13) by Summer Phelps, N.P., and Dr. Proctor.
"38. On July 15, 2013, [Fleming] was brought back to the RMC emergency department by Oxford EMS, and according to records, complaining of urinary retention, severe abdominal pain and constipation.
"39. [Fleming] again reported his history involving his prior admission and canceled surgery.
"40. Again, [Fleming] was seen and sent home, this time by Dr. Simmons.
"41. During this entire time, [Blue Advantage] was providing for a certain level of care to be provided to [Fleming]: non-surgical management of his life-threatening bowel obstruction. However, [Blue Advantage] never agreed to provide him with the higher quality of care he needed: life-saving surgical intervention.
"42. At approximately 10:30 a.m., [Fleming] was brought by Anniston EMS to *369 Stringfellow Memorial Hospital in severe distress.
"43. [Fleming's] condition declined rapidly, he had to be intubated, eventually coded and died after midnight that night (the night of 7/15/13, the morning of 7/16/13).
"44. Dr. Thomas Garland performed an autopsy, which confirmed that [Fleming] had a perforated sigmoid colon with abundant fecal material identified within the peritoneal cavity.
"45. Dr. Crawford attended at least a portion of the autopsy.
"46. Dr. Vishwanath M. Reddy certified [Fleming's] death certificate listing the cause of death as follows: septic shock due to peritonitis due to colonic perforation."
On July 14, 2015, Ghee, as personal representative of Fleming's estate, filed a wrongful-death action in the Calhoun Circuit Court against Blue Advantage, Northeast Alabama Regional Medical Center, the Crawford Clinic, four doctors, and a nurse, asserting that their combined and concurring negligence and wrongful conduct proximately caused Fleming's death. Specifically with respect to Blue Advantage, Ghee alleged that it contributed to Fleming's death through the following actions:
"68. [Blue Advantage] had or voluntarily assumed one or more of the following duties, jointly or in the alternative: a duty to act with reasonable care in the determining the quality of healthcare [Fleming] would receive; a duty not to provide to [Fleming] a quality of healthcare so low that it knew that [Fleming] was likely to be injured or killed; and a duty to exercise such reasonable care, skill, and diligence as other similarly situated healthcare providers in the same general line of practice ordinarily have and exercise in a like case.
"69. [Blue Advantage] breached those duties, jointly or in the alternative, as follows:
"a. Negligently providing for a lower quality of healthcare for [Fleming];
"b. Wantonly providing for a lower quality of healthcare for [Fleming];
"c. Breaching the standard by (i) failing to provide a higher quality of healthcare to [Fleming] (necessary, life saving surgery) and (ii) failing to communicate adequately with [Fleming]'s healthcare providers his need for surgery.
"70. Those breaches combined with the actions of other defendants as a legal cause of death for ... Fleming, in that without the breaches, [Fleming] would have more likely than not survived.
"71. Per Dukes v. US Healthcare, Inc., 57 F.3d 350 (3d Cir. 1995), Ghee makes no complaint that benefits were denied to [Fleming]; indeed, [Blue Advantage] provided multiple, numerous and repeated benefits (a high quantity) to [Fleming] in an attempt to manage his bowel obstruction without surgery. Ghee's only complaint against [Blue Advantage], as detailed above, involves the quality of the benefit received, specifically that it was of such a low quality (did not include necessary surgery) that it caused [Fleming]'s death. Further, considering [Fleming] is deceased, he necessarily cannot attempt to force [Blue Advantage] to provide any benefits to him. He is dead. Because of this indisputable reality, Ghee does not seek any benefits or even compensatory damages (state law does not allow for such damages) but instead only the wrongful death, punitive damages allowed by Alabama state law."
On August 20, 2015, Blue Advantage removed the case to the United States *370 District Court for the Northern District of Alabama on the basis of complete preemption under ERISA, specifically under 29 U.S.C. § 1132. On August 27, 2015, Blue Advantage filed a motion in the circuit court to dismiss the claim against it based on federal preemption. On September 9, 2015, Ghee filed a motion to stay all proceedings in federal court until the federal district court had ruled on the issue of subject-matter jurisdiction. The federal district court granted that motion the following day. On September 21, 2015, Ghee filed a motion to remand the case to the circuit court on the ground that the claims were not completely preempted by ERISA.
On December 2, 2015, the federal district court entered an order remanding the case to the circuit court. In its order, the federal district court explained that complete preemption did not apply because Ghee was not seeking benefits under the ERISA plan but, rather, was seeking only punitive damages under Alabama's "unique" wrongful-death statute. The federal district court noted that "[b]ecause the Alabama wrongful death statute does not allow recovery for the value of benefits denied, only punishment for causing a death, the suit could not be brought under the ERISA private enforcement action." Ghee v. Regional Med. Ctr. Bd., No. 1:15-CV-1430-VEH, Dec. 2, 2015 (N.D. Ala. 2015) (not reported in F. Supp. 3d).[3]
On December 29, 2015, Blue Advantage filed a motion to dismiss based on the affirmative defense of ordinary, or defensive, ERISA preemption, specifically under 29 U.S.C. § 1144(a). Blue Advantage argued that Ghee's wrongful-death action "relates to" Blue Advantage's administration of the ERISA plan's benefits and that, therefore, the claims asserted therein were preempted. Specifically, it explained that "without ... Blue Advantage's coverage determination, Ghee would have no basis to allege that Blue Advantage failed to provide Fleming with the appropriate quality of care." Blue Advantage attached the ERISA plan to its motion to dismiss, noting that Ghee had referenced the plan in his complaint.
On March 1, 2016, Ghee filed a response in opposition to Blue Advantage's motion to dismiss. Ghee contended that he was not relying on Blue Advantage's administration of the ERISA plan but, rather, was asserting a claim based on Blue Advantage's intervening in Fleming's health-care treatment and mandating the treatment he must receive, which treatment, Ghee asserts, led to his death.
On October 4, 2016, the circuit court entered an order granting Blue Advantage's Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss on the basis of defensive preemption. In the order, the circuit court also certified the order as final under Rule 54(b), Ala. R. Civ. P., because, it reasoned, Blue Advantage's preemption defense did not apply to any of the other defendants and the ruling did not affect Ghee's claims against the other defendants. The order further stated: "[Ghee] is granted leave to file an amended complaint within 30 days of the date of this order, should he choose to do so, to pursue any relief to which he may believe himself entitled under ERISA."
*371 On October 26, before the 30-day window to amend his complaint had run, Ghee filed a notice of appeal to this Court.
II. Analysis
Although neither party argues on appeal that the circuit court's certification of its October 4, 2016, order as final under Rule 54(b) was inappropriate, if it was not appropriate, then this Court's jurisdiction is implicated. "[J]urisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu." Nunn v. Baker, 518 So.2d 711, 712 (Ala. 1987). See also, e.g., Fuller v. Birmingham-Jefferson Cty. Transit Auth., 147 So.3d 907, 911 (Ala. 2013) (affirming the authority of an appellate court to take notice of "jurisdictional matters, such as whether an order is final so as to support an appeal").
Rule 54(b) provides, in part:
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."
This Court has stated:
" 'The purpose of Rule 54(b)... is to make final "an order which does not adjudicate the entire case but as to which there is no just reason for delay in the attachment of finality." ' Ex parte James, 836 So.2d 813, 852 (Ala. 2002) (Moore, C.J., concurring in the result in part and dissenting in part) (quoting Foster v. Greer & Sons, Inc., 446 So.2d 605, 609 (Ala. 1984), overruled on other grounds, Ex parte Andrews, 520 So.2d 507 (Ala. 1987) ). However, ' "[n]ot every order has the requisite element of finality that can trigger the operation of Rule 54(b)." ' Dzwonkowski[ v. Sonitrol of Mobile, Inc.,] 892 So.2d [354,] 361 [ (Ala. 2004) ] (quoting Goldome Credit Corp. v. Player, 869 So.2d 1146, 1147 (Ala. Civ. App. 2003) (emphasis omitted)).
" ' " Rule 54(b) certifications 'should be made only in exceptional cases.' " ' Posey v. Mollohan, 991 So.2d 253, 258-59 (Ala. Civ. App. 2008) (quoting Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 212 (Ala. Civ. App. 1997) )."
Stephens v. Fines Recycling, Inc., 84 So.3d 867, 874-75 (Ala. 2011). More specifically, a Rule 54(b) certification "must fully adjudicate at least one claim":
" '[F]or a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the claims as they relate to at least one party.' Haynes v. Alfa Fin. Corp., 730 So.2d 178, 181 (Ala. 1999).
" 'If an order does not completely dispose of or fully adjudicate at least one claim, a court's Rule 54(b) certification of the order is not effective. See Haynes v. Alfa Fin. Corp., 730 So.2d 178 (Ala. 1999). Damages are only one portion of a claim to vindicate a legal right, even though the damages claimed may consist of several elements. See id. at 181. An order is not final if it permits a party to return to court and prove more damages or if it leaves open the question of additional recovery. See Precision American Corp. v. Leasing Serv. Corp., 505 So.2d 380, 382 (Ala. 1987).'
" Grantham v. Vanderzyl, 802 So.2d 1077, 1080 (Ala. 2001)."
Certain Underwriters at Lloyd's, London v. Southern Nat. Gas Co., 939 So.2d 21, 28 (Ala. 2006) (emphasis omitted).
A "claim" for purposes of Rule 54(b) is not a separate "count" or legal theory set out in a complaint; it essentially is the cause of action from which the plaintiff's theories of recovery emerge.
*372 "The Scrushy [v. Tucker, 955 So.2d 988 (Ala. 2006),] Court quoted with approval the United States Court of Appeals for the Seventh Circuit for ' "certain rules of thumb to identify those types of claims that can never be considered separate" ' for purposes of Rule 54(b). 955 So.2d at 998 (quoting Stearns v. Consolidated Mgmt., Inc., 747 F.2d 1105, 1108 (7th Cir. 1984) ). One such rule is that ' " 'claims cannot be separate unless separate recovery is possible on each.... Hence, mere variations of legal theory do not constitute separate claims.' " ' Id. (quoting Stearns, 747 F.2d at 1108-09, quoting in turn Amalgamated Meat Cutters v. Thompson Farms Co., 642 F.2d 1065, 1071 (7th Cir. 1981) ). The Scrushy Court also noted the similar rule of the United States Court of Appeals for the Second Circuit, see Rieser v. Baltimore & Ohio R.R., 224 F.2d 198, 199 (2d Cir. 1955), which was summarized by the commentators of Federal Practice and Procedure:
" ' "A single claimant presents multiple claims for relief under the Second Circuit's formulation when the possible recoveries are more than one in number and not mutually exclusive or, stated another way, when the facts give rise to more than one legal right or cause of action.... However, when a claimant presents a number of legal theories, but will be permitted to recover only on one of them, the bases for recovery are mutually exclusive, or simply presented in the alternative, and plaintiff has only a single claim for relief for purposes of Rule 54(b)." '
" 955 So.2d at 998 (quoting 10 Charles Alan Wright et al., Federal Practice & Procedure § 2657 (3d ed. 1998) (footnotes omitted))."
North Alabama Elec. Coop. v. New Hope Tel. Coop., 7 So.3d 342, 345 (Ala. 2008) (emphasis added). We also have stated:
"Neither federal nor state courts have been able to settle on a single test to determine when claims are separate or exactly what constitutes a claim. See, Tolson [v. United States ], 732 F.2d [998,] at 1001 [ (D.C. Cir. 1984) ] ; Cates v. Bush, 293 Ala. 535, 307 So.2d 6 (1975). However, authorities have stated that 'when plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and subdivision (b) [of rule 54 ] does not apply.' 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d, § 2657, at 69-71 (1983); Landry v. G.B.A., 762 F.2d 462, 464 (5th Cir. 1985)."
Precision American Corp. v. Leasing Serv. Corp., 505 So.2d 380, 381 (Ala. 1987) (emphasis added).
In this case, the circuit court purported to adjudicate Ghee's claim stemming from Blue Advantage's failure to approve a colectomy as treatment for Fleming's problem, but in so doing it entered an order that expressly allows Ghee to amend his complaint "within 30 days of the date of this order, should he choose to do so, to pursue any relief to which he may believe he is entitled under ERISA." Any claim for relief Ghee may state under ERISA would stem from the same conduct on the part of Blue Advantage that gave rise to Ghee's state-law claim. In other words, in the same order in which the circuit court purported to fully adjudicate Ghee's "claim," or cause of action, against Blue Advantage, it left open the possibility that Ghee could reframe and reassert that cause under another legal theory.
Such an order is not proper for Rule 54(b) certification. To permit a trial court to adjudicate a claim as pleaded by the plaintiff, while simultaneously permitting the plaintiff to amend his or her complaint in an effort to assert a different theory to vindicate the same right, would *373 entirely undermine the purpose of Rule 54(b). Rule 54(b) exists because " ' " ' "[a]ppellate review in a piecemeal fashion is not favored." ' " ' " Schlarb v. Lee, 955 So.2d 418, 419 (Ala. 2006) (quoting Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala. 2004), quoting in turn Goldome Credit Corp. v. Player, 869 So.2d 1146, 1148 (Ala. Civ. App. 2003), quoting in turn other cases (emphasis omitted)). Concomitantly, as noted, " ' " '[c]ertifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.' " ' " Id. (quoting Dzwonkowski, 892 So.2d at 363, quoting in turn State v. Lawhorn, 830 So.2d 720, 725 (Ala. 2002), quoting in turn Baker v. Bennett, 644 So.2d 901, 903 (Ala. 1994) ).
It is true that in his reply brief Ghee disavows having an ERISA claim stemming from the same conduct on which Ghee based his state-law claim. But nothing bars Ghee from changing his position and asserting such a claim on remand once this Court has addressed the present appeal. And the circuit court has expressly held open the record so as to make that possible.[4] The circuit court cannot purport to enter a final adjudication of a claim while making it possible for the plaintiff to revive that very claim. Accordingly, the circuit court did not render a proper Rule 54(b) certification, and we do not have before us a final judgment.
Because the appeal before us is not from a final judgment, it is dismissed.
APPEAL DISMISSED.
Stuart, C.J., and Bolin, Main, and Bryan, JJ., concur.

A colectomy is a surgery that involves removal of all or part of the colon.

In its brief, Blue Advantage states: "This is a misnomer in the complaint. It should read 'ICD9 code 564.9.' CPT codes refer to procedures (the colectomy ). ICD9 codes refer to diagnosis (Fleming's unspecified functional disorder of intestine )."

Blue Advantage could not appeal this decision because federal law prohibits review of a federal district court's remand, following a removal, that is based on subject-matter jurisdiction. See 28 U.S.C. § 1447(c) & (d); In re Loudermilch, 158 F.3d 1143, 1145 (11th Cir. 1998) ("[I]f the district court remands a case based on reasons set forth in section 1447(c), no review may be had: whether the district court's decision was correct or not makes no difference.").

As noted, Ghee appealed the circuit court's order within 30 days of the date of the order, leaving open the possibility that Ghee could amend his complaint following our disposition of this appeal.