Rel: September 27, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

### SC-2024-0084
_____

## CMB Holdings Group d/b/a Twelve25 Sports Bar and Entertainment Venue

## v.

## City of Tuscaloosa; Walter Maddox, individually and in his capacity as Mayor of the City of Tuscaloosa; Lee Busby, Norman Crow, John Faile, Raevan Howard, Cassius Lanier, Kip Tyner, and Matthew Wilson, individually and in their capacities as members of the Tuscaloosa City Council; and Patrick Stines, in his capacity as Fire Marshal for the City of Tuscaloosa

### Appeal from Tuscaloosa Circuit Court
### (CV-23-900328)

MITCHELL, Justice.

The Tuscaloosa City Council recently passed a municipal ordinance that limits the maximum occupancy of certain restaurants. The owner of a sports bar affected by the ordinance responded by suing the City of Tuscaloosa, its mayor, its city council members, and its fire marshal on a variety of claims. The Tuscaloosa Circuit Court rejected all but one of those claims and certified its judgment as final for purposes of Rule 54(b), Ala. R. Civ. P. Because we conclude that the Rule 54(b) certification was improper, we dismiss the appeal.

<u>Facts and Procedural History</u>

On March 7, 2023, the City of Tuscaloosa passed City Ordinance No. 9353 ("the Ordinance"), which provides, in relevant part:

> "Occupant limits for restaurant liquor licenses and on-premise beer and wine shall be established with applicable furnishings arranged for dining as shown on the alcohol license application. There shall be no dual occupant limit for restaurants and gastropubs to increase the occupant limit when furnishings are removed or reconfigured. Any increase in the occupant limit due to reconfiguring furnishings must be approved by the city council."

In other words, the Ordinance requires an establishment whose alcohol license is issued as a restaurant to be assigned an occupancy limit corresponding to its configuration as a restaurant ("with applicable

2

furnishings arranged for dining") rather than as a bar or some other entertainment venue ("when furnishings are removed or reconfigured"). The Ordinance accomplished this by amending Chapter 3 ("Alcoholic Beverages") and Chapter 11 ("Fire Prevention and Protection") of the Tuscaloosa Code of Ordinances.

Before the Ordinance's enactment, facilities known as "gastropubs" -- defined as venues that operate as restaurants by day and bars by night -- were able to take advantage of dual occupancy limits: a smaller limit when configured as a restaurant with full furnishings, and a larger limit when reconfigured with furnishings removed. By eliminating dual occupancy limits, the Ordinance effectively reduced the maximum occupancy of gastropubs by preventing them from taking advantage of a higher occupancy limit during evening hours.

Twelve25 Sports Bar and Entertainment Venue is a gastropub owned and operated by CMB Holdings Group and located in a part of Tuscaloosa known as "the Strip," an area near the University of Alabama's campus that is home to numerous bars and restaurants and that serves as a popular destination for college students. Although CMB now indicates that the most important aspect of Twelve25 is the sports-

bar side, it classified Twelve25 as a "restaurant" to obtain a restaurant liquor license; accordingly, it falls within the class of business covered by the Ordinance.

Before the Ordinance's passage, Twelve25 enjoyed a dual occupancy limit: it had a maximum occupancy of 287 persons when configured as a restaurant and a much higher occupancy limit of 519 when configured as a bar. By capping Twelve25's maximum occupancy at 287 persons, the Ordinance hurt the sports-bar portion of Twelve25's business, ultimately decreasing its overall revenue.

Not long after the Ordinance was enacted, CMB brought this lawsuit against the City of Tuscaloosa; Tuscaloosa Mayor Walter Maddox, in both his personal and official capacity; Tuscaloosa City Council members Lee Busby, Norman Crow, John Faile, Raevan Howard, Cassius Lanier, Kip Tyner, and Matthew Wilson ("the councilors"), in both their personal and official capacities; and Tuscaloosa Fire Marshal Patrick Stines, in his official capacity only.

In broad outline, CMB's complaint alleges that it was the victim of a racially discriminatory conspiracy designed to "target[] [its] minority-owned business." CMB contends that the defendants "wrongfully and

4

illegally" blamed Twelve25 for a shooting that took place on the Strip in January 2023 that allegedly involved some of Twelve25's patrons. In CMB's view, the defendants used that shooting as a pretext for enacting the Ordinance, which -- according to CMB -- was really designed to punish CMB for having black ownership, for attracting black clientele, and for "attract[ing] significant numbers of customers away from already-established businesses on the Strip which have white owners." The defendants -- many of whom are themselves black -- deny these allegations.

CMB's complaint goes on to demand money damages and equitable relief under 17 pleaded counts, the captions of which we list verbatim from the complaint:

1.    Alabama Constitution, Art. I, Sec. 22, Impairment of Obligations of Contracts

2.    Violation of Ala. Code § 11-52-77

3.    Violation of Vested Rights

4.    Preemption

5.    Alabama Constitution, Art. I, Secs. 6 and 13, Violation of Procedural Due Process

6.    Alabama Constitution, Art. I, Secs. 1, 6, and 13, Violation of Substantive Due Process

5

7. Alabama Constitution, Art. I, Secs. 1, 6, 13, 22, and 35, Violation of Equal Protection

8. Alabama Constitution, Art. I, Sec. 23, Inverse Condemnation

9. Alabama Constitution, Art. I, Sec. 6, Unreasonable Seizure

10. Conversion

11. Fraud and/or Negligent Misrepresentation, Reckless and Intentional Misrepresentation and Suppression

12. Equitable Estoppel

13. Violation of Ala. Code § 11-45-8(c)

14. Tortious Interference with Contractual Relations

15. Unjust Enrichment

16. Declaratory Judgment

17. Preliminary and Permanent Injunctive Relief

The defendants moved to dismiss all of those counts except for count 13, as to which the defendants sought summary judgment. In response to that motion, CMB conceded that it could not seek money damages against the City and that counts 8, 9, and 10 of its complaint were not viable. But CMB argued that its other claims should proceed.

The trial court held a hearing on the defendants' motion and later issued an order granting that motion in large part. Specifically, the trial court: (a) dismissed all claims for money damages against the City based

on CMB's concession; (b) dismissed counts 8, 9, and 10, again based on CMB's concession; (c) dismissed all personal-capacity claims for money damages against the mayor and the councilors based on its determination that they have legislative immunity from suit; and (d) dismissed all official-capacity claims against the mayor, the councilors, and Stines ("the individual defendants") based on the determination that those claims were fairly encompassed within CMB's concession that it could not state any viable claims against the City. Those rulings left intact only CMB's claims for equitable relief against the City in counts 1-7 and 11-17, which the trial court went on to address on a count-by-count basis. In its analysis, the trial court determined that all of CMB's claims failed, except for counts 1, 16, 17 -- which, according to the trial court, "together state a valid claim against the City only, under the Alabama Constitution's Contracts Clause, solely for declaratory and injunctive relief."

CMB responded to that ruling by asking the trial court to alter, amend, or vacate its judgment or, in the alternative, to certify the judgment as final under Rule 54(b) (which would enable CMB to immediately appeal the adverse rulings). The trial court denied CMB's

7

request to alter, amend, or vacate the judgment, but it granted its request for a Rule 54(b) certification after "determin[ing] that there is no just reason for delay." CMB then timely appealed the trial court's judgment dismissing the adjudicated claims.

## Appellate Jurisdiction

Before we can consider the merits of CMB's arguments on appeal, we must resolve a threshold question: whether the trial court properly certified its judgment as final under Rule 54(b). This Court has an obligation to "scrutinize the propriety of Rule 54(b) certifications even in cases where no party addresses this 'fundamental issue.'" Alabama Ins. Underwriting Ass'n v. Skinner, 352 So. 3d 688, 690 (Ala. 2021) (citation omitted). Here, CMB defends the trial court's certification, while the defendants argue that it was improper.

Rule 54(b) provides in relevant part:

"When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

A proper certification under Rule 54(b) designates an otherwise nonfinal judgment as "final" for purposes of appellate jurisdiction. Sparks v. City

8

of Florence, 936 So. 2d 508, 512 (Ala. 2006). An improper Rule 54(b) certification, however, does not create a valid final judgment and therefore cannot confer jurisdiction over the appeal. Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So. 2d 354, 362 (Ala. 2004).

"This Court looks with some disfavor upon certifications under Rule 54(b)," because piecemeal appeals typically entail considerable delay, expense, and uncertainty. Schlarb v. Lee, 955 So. 2d 418, 419 (Ala. 2006). Such certifications, we have explained, "'"'should be entered only in exceptional cases'"'" and not as a matter of course. Id. (citations omitted). In keeping with that principle, we have held that a trial court exceeds its discretion in determining that there is "no just reason for delay" whenever the adjudicated and unadjudicated claims are "'"'so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.'"'" Lighting Fair, Inc. v. Rosenberg, 63 So. 3d 1256, 1263 (Ala. 2010) (citations omitted).

Applying those principles here, we conclude that the trial court's Rule 54(b) certification was improper because CMB's unadjudicated claims are closely intertwined with several of the adjudicated claims at

9

issue in this appeal. That is especially true when it comes to CMB's constitutional claims, which make up the bulk of its complaint.

Recall that CMB's unadjudicated claims (counts 1, 16, and 17) seek declaratory and injunctive relief based on CMB's allegation that enforcement of the Ordinance would violate Article I, § 22, of the Alabama Constitution. That provision of our Constitution guarantees

> "[t]hat <u>no</u> ex post facto law, nor any <u>law, impairing the obligations of contracts</u>, or making any irrevocable or exclusive grants of special privileges or immunities, <u>shall be passed by the legislature</u>; and <u>every grant or franchise, privilege, or immunity, shall forever remain subject to revocation, alteration, or amendment</u>."

Art. I, § 22, Ala. Const. 2022 (emphasis added).

In analyzing the merits of CMB's unadjudicated § 22 claims, the trial court will be asked to resolve several disputes that are also at issue in CMB's appeal of its adjudicated claims. The first of those disputes involves whether the Ordinance impaired CMB's "vested rights," as opposed to merely affecting a "franchise" or "privilege." The defendants argue that the maximum-occupancy limit affected by the Ordinance is, "on its face," a mere "license or 'privilege'" and that, as a result, the Ordinance's modification of that occupancy limit cannot support either CMB's § 22 claims or its adjudicated vested-rights claim (count 3).

10

Defendants' brief at 16.[1] CMB disagrees, contending that the Ordinance affected its vested rights. While we express no view on the merits of that dispute, the parties' arguments on this point reveal that both the adjudicated vested-rights claim and the unadjudicated § 22 claims turn on a common question: whether the Ordinance affected a vested right or a mere privilege. That commonality creates an obvious risk of inconsistent results if the two sets of claims were to be litigated separately.

The second dispute common to both the adjudicated and unadjudicated claims involves whether the Ordinance represented a proper exercise of the City's police powers. As this Court has long held, the government's "general police powers are not inhibited" by § 22's prohibition on laws impairing the obligations of contracts. Sumter Cnty.

---

[1]The precise contours of CMB's "vested rights" claim are somewhat unclear. Count 3 of CMB's complaint seems to assume that there exists a freestanding claim for relief based on violations of "vested rights" and that such a claim can be brought independently of §§ 1, 6, 13, and 22 of the Alabama Constitution. Because we are dismissing this appeal for want of appellate jurisdiction, we express no view on the merits of that assumption. But, whatever the contours CMB's vested-rights claim, it is clear from CMB's briefing on appeal that CMB has premised that claim on the argument that the Ordinance affected CMB's vested rights, as opposed to affecting a mere franchise or privilege that CMB enjoys.

Bd. of Educ. v. University of W. Alabama, 349 So. 3d 1264, 1275 n.5 (Ala. 2021) (collecting cases).  In general, so long as the government exercises its police powers to serve a genuine "public end," the resulting law does not violate § 22, even if it has the incidental effect of impairing private contracts.  Id.  The question whether the Ordinance serves a genuine public end is hotly disputed in both the still-pending § 22 claims and the adjudicated procedural and substantive due-process claims (counts 5 and 6) -- all of which center on CMB's allegation that the Ordinance was enacted solely to discriminate against black business owners and clientele, rather than to support any legitimate public interest.  Again, this commonality could give rise to inconsistent results and illustrates why these claims are ill-suited to piecemeal adjudication.

A third area of overlap involves CMB's equal-protection claim (count 7).  In its briefing on appeal, CMB acknowledges that the Alabama Constitution does not contain an equal-protection clause akin to the Equal Protection Clause contained in the Fourteenth Amendment to the United States Constitution.  But CMB nonetheless argues that there is an equal-protection "component" to (among other provisions) § 22 of the Alabama Constitution and that this equal-protection component of § 22

12

is separately enforceable. CMB's brief at 39 & n.3; see also CMB's reply brief at 23-26; cf. Dixon v. City of Auburn, [Ms. SC-2022-0741, Oct. 27, 2023] ___ So. 3d ___, ___ (Ala. 2023) (noting that "courts and commentators have debated whether Alabama's Constitution independently provides for an equal-protection claim and what the contours of such a claim would be"). CMB does not explain how, in its view, the equal-protection component of § 22 gives rise to a standalone cause of action. But, whatever the mechanism, CMB's briefing makes clear that its equal-protection claim derives at least in part from its theories about the nature and scope of § 22. Separate adjudication of those two sets of claims could therefore require this Court to "'"'consider the same issue'"'" -- namely, the scope, history, and meaning of Section 22 -- "'"'a second time,'"'" which is precisely the scenario Rule 54(b) was designed to prevent. Fuller v. Birmingham-Jefferson Cnty. Transit Auth., 147 So. 3d 907, 912 (Ala. 2013) (citations omitted).

The extensive overlap between CMB's adjudicated and unadjudicated claims makes clear that this case is not one of the "exceptional cases" for which piecemeal appellate review is appropriate.

The judgment the trial court certified was therefore not an appealable final judgment, and, accordingly, we dismiss the appeal.

<u>Conclusion</u>

CMB's appeal is dismissed as having been taken from a nonfinal judgment.

APPEAL DISMISSED.

Parker, C.J., and Shaw, Wise, Mendheim, Stewart, and Cook, JJ., concur.

Bryan and Sellers, JJ., concur in the result.