Rel: January 6, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

### 1200401

_____

**Tamera Erskine, as personal representative
of the Estate of Joann Bashinsky, deceased**

**v.**

**J. Kenneth Guin, Jr., and Gregory H. Hawley**

_____

### 1210153

_____

**John P. McKleroy, Jr., and Patty Townsend**

**v.**

**Landon E. Ash and Tamera Erskine, as personal representative of the Estate of Joann Bashinsky, deceased**

**Appeals from Jefferson Probate Court
(19BHM02213)**

PER CURIAM.

Tamera Erskine, as the personal representative of the estate of Joann Bashinsky ("Ms. Bashinsky"), deceased, appeals from: (1) an order of the Jefferson Probate Court awarding fees to the temporary guardian and conservator for Ms. Bashinsky previously appointed by the probate court and (2) an order awarding fees to a guardian ad litem appointed to represent Ms. Bashinsky in a proceeding seeking the appointment of a permanent guardian and conservator commenced by John P. McKleroy, Jr., and Patty Townsend. McKleroy and Townsend separately appeal from the probate court's order of dismissal with prejudice of all remaining pending matters following Ms. Bashinsky's death.[1]

---

[1]This Court granted the uncontested motion to incorporate the record filed in appeal no. 1210153 with the record filed in appeal no. 1200401. In a January 14, 2022, order, this Court consolidated the two appeals.

## I. Facts

This is the second time this case has come before us. In Ex parte Bashinsky, 319 So. 3d 1240 (Ala. 2020), we dealt with Erskine's challenges to the probate court's handling of McKleroy and Townsend's "Emergency Petition for a Temporary Guardian and Conservator" ("the emergency petition") concerning Ms. Bashinsky. In the present appeals, we deal with the aftermath of our decision in Ex parte Bashinsky. Because our analysis in Ex parte Bashinsky is integral to our disposition of appeal number 1200401, we must reiterate some of the facts recounted in that opinion. We then describe in detail the procedural history in this case that unfolded after we issued our decision in Ex parte Bashinsky.

This case was commenced on October 1, 2019, when McKleroy and Townsend simultaneously filed the emergency petition and a petition seeking the appointment of a permanent guardian and conservator for Ms. Bashinsky. Ms. Bashinsky was the widow of Sloan Y. Bashinsky, who owned the majority stock in Golden Enterprises, Inc., and who was the founder, chairman, and chief executive officer of Golden Flake Foods ("Golden Flake"). McKleroy and Townsend, two former Golden Flake employees who had professional relationships with Ms. Bashinsky,

alleged that Ms. Bashinsky was incapable of caring for herself and for her assets, which were then valued at approximately $218 million. McKleroy and Townsend's allegations of Ms. Bashinsky's incompetence centered on her request that Level Four Advisory Services LLC, which held approximately $35 million of Ms. Bashinsky's personal assets, transfer $17.5 million to David Heath at the investment firm Morgan Stanley. McKleroy and Townsend further alleged that the transferred assets would end up being controlled by Ms. Bashinsky's grandson, Landon E. Ash, whom they alleged had already accumulated $23.5 million in total indebtedness to Ms. Bashinsky and whom they alleged exerted undue influence upon Ms. Bashinsky.

On October 17, 2019, Probate Judge Alan King held a hearing on the emergency petition, at which he granted a motion of McKleroy and Townsend to disqualify Ms. Bashinsky's chosen attorneys without giving Ms. Bashinsky an opportunity to waive any alleged conflict. He further refused to grant a requested continuance so that Ms. Bashinsky could retain substitute counsel. The hearing then proceeded on the matter of the appointment of a temporary guardian and conservator. Judge King refused to allow Ms. Bashinsky to cross-examine witnesses during the

hearing or to allow her to testify on her own behalf.[2] After concluding the hearing, Judge King, on the same day, entered a written order in which he purported to appoint Gregory H. Hawley, the general conservator for Jefferson County, as the temporary guardian and conservator for Ms. Bashinsky.[3]

Ms. Bashinsky petitioned this Court for a writ of mandamus directing the probate court to vacate its orders disqualifying her attorneys from representing her in the underlying proceedings and appointing a temporary guardian and conservator over her person and property. She also sought dismissal of the emergency petition and the petition for a permanent guardian and conservator. On July 2, 2020, this Court issued an opinion addressing Ms. Bashinsky's mandamus petition.

---

[2]Robert S. Gwin, whom Judge King had appointed as Ms. Bashinsky's guardian ad litem for the proceedings on the emergency petition, had informed Judge King following the disqualification of her attorneys that he was not able to, and he would not, act as Ms. Bashinsky's counsel during the proceedings. See Ex parte Bashinsky, 319 So. 3d at 1250.

[3]McKleroy and Townsend's emergency petition had recommended that Hawley be appointed temporary guardian and conservator. Hawley testified during a subsequent hearing in this case that he was originally appointed as general conservator for Jefferson County by Judge King in 2013.

In Ex parte Bashinsky, we explained that the authority to establish a temporary guardianship/conservatorship is premised on the existence of an actual emergency that does not permit time to make an immediate competency determination; if no such emergency exists, we explained, then the statutory process for establishing a permanent guardianship/conservatorship applies. We concluded that, in this case, no such emergency existed -- or was even alleged by McKleroy and Townsend -- because there was no immediate threat to Ms. Bashinsky's health, safety, and welfare or of the dissipation of her assets. Because there was no emergency, we held that the requirements for establishing a permanent guardianship/conservatorship applied. We noted that the probate court had violated the basic requirements of a hearing regarding whether to establish a permanent guardianship/conservatorship by: (1) failing to provide Ms. Bashinsky notice of the competency hearing; (2) not allowing Ms. Bashinsky to be represented by counsel; and (3) preventing Ms. Bashinsky from presenting testimony and evidence on her behalf and to cross-examine witnesses. Specifically, we stated:

> "Because we have determined that no 'emergency' was presented in that hearing, the representation and case-presentation rights afforded to a respondent in §§ 26-2A-102 and 26-2A-135[, Ala. Code 1975,] were applicable. Those

6

provisions, and Ms. Bashinsky's basic due-process rights, were egregiously violated, as the probate court treated the proceeding like an ex parte hearing <u>even though Ms. Bashinsky was present</u>.

"....

"... 'A judgment is void ... if the court rendering it ... acted in a manner inconsistent with due process.' <u>Insurance Mgmt. & Admin., Inc. v. Palomar Ins. Corp.</u>, 590 So. 2d 209, 212 (Ala. 1991). Accordingly, we conclude that the probate court's October 17, 2019, order appointing a temporary guardian and conservator must be set aside. <u>Given that the hearing appointing a temporary guardian and conservator was a nullity</u>, it follows that the determination to disqualify Ms. Bashinsky's attorneys that occurred during that hearing, and which precipitated the aforementioned due-process violations, must also be set aside."

<u>Ex parte Bashinsky</u>, 319 So. 3d at 1262-63 (second emphasis added). At the conclusion of our opinion, we explained:

"[T]he <u>October 17, 2019, order appointing a temporary guardian and conservator for Ms. Bashinsky is void</u>, as is the order disqualifying Ms. Bashinsky's counsel. We therefore grant the petition for the writ of mandamus as to those orders and direct the probate court to vacate its October 17, 2019, orders, <u>to require the temporary guardian and conservator to account for all of Ms. Bashinsky's funds and property</u>, and to dismiss the emergency petition."[4]

--------

[4]The Court also determined that McKleroy and Townsend's petition seeking the appointment of a permanent guardian and conservator over Ms. Bashinsky's person and property was not properly before the Court because the probate court had not issued any orders at that time pertaining to that petition, and we therefore denied Erskine's petition for a writ of mandamus insofar as it sought relief relating to that petition.

Id. at 1263 (emphasis added).

On July 16, 2020, Chief Justice Parker appointed Walker County Probate Judge A. Lee Tucker as a special Jefferson Probate Judge to preside over the matters.[5] On August 28, 2020, pursuant to Ex parte Bashinsky, Judge Tucker entered an order vacating Judge King's October 17, 2019, order that had appointed Hawley temporary guardian and conservator and dismissing the emergency petition. The August 28, 2020, order also required Hawley to "file with the probate court an accounting for Mrs. Joann Bashinsky's funds and property within Forty-Five (45) days from the date of this order." Finally, the order provided that the petition for a permanent guardian and conservator would be set for a hearing after the petition was served upon Ms. Bashinsky and Ash.

On August 6, 2020, Hawley filed what he styled a "Petition for Final Settlement of Conservatorship." On September 3, 2020, Ms. Bashinsky filed a "Response and Objection to Petition for Final Settlement of Conservatorship" in which she complained that Hawley had not "include[d] all supporting documents necessary for determination

_____

[5]Judge King retired from the bench on May 31, 2020.

8

whether the payments were properly made on behalf of Ms. Bashinsky." She also more generally objected "to the credit or payment of any fees or expenses to Hawley as the Alabama Supreme Court held the October 17, 2019, order appointing [Hawley]" void and to "the payment of attorney fees and expenses to [various law firms] for their service as counsel to Hawley during the pendency of his appointment as Temporary Guardian and Conservator pursuant to the Probate Court's October 17, 2019, order which the Alabama Supreme Court ruled void and a nullity." On September 30, 2020, Hawley filed a "Reply to Response and Objections to Petition for Final Settlement of Conservatorship" in which he stated that he was "ready to produce any documentation corroborating receipts and disbursements set forth in the Final Settlement Petition." Hawley further contended that he

> "and his attorneys are fully entitled to be paid for the legal and fiduciary work performed in this case resulting from the orders of the Probate Court …. Mr. Hawley was clearly duty bound to fulfill his fiduciary duties as temporary Guardian and Conservator as ordered by [the probate] court until such time his appointment was terminated or vacated, which again did not occur until [the probate] court's ruling on August 28, 2020. Mr. Hawley is now further duty bound to fulfill his court-ordered work to prepare, file and arrange for the property adjudication of a Petition for Final Settlement as directed by [the probate] court."

9

On October 6, 2020, Judge Tucker entered an order stating that "[t]he Petition for Final Settlement of Conservatorship of the Estate of Joann F. Bashinsky, filed by Gregory H. Hawley, Conservator is hereby set for hearing December 8, 2020, at 9:00 A.M. in the Probate Court of Jefferson County."

On September 28, 2020, Ms. Bashinsky filed a motion to strike portions of McKleroy and Townsend's petition for a permanent guardian and conservator. On October 16, 2020, Judge Tucker appointed J. Kenneth Guin, Jr., as guardian ad litem for Ms. Bashinsky "to protect her interests and report to the court, regarding the application of John McKleroy, as Petitioner, for the appointment of a Guardian and Conservator."[6] Given this Court's July 2, 2020, ruling in Ex parte Bashinsky, Guin's appointment clearly was made for the purpose of representing Ms. Bashinsky's interests in the proceedings on the pending petition for a permanent guardian and conservator.

---

[6]Guin was the third guardian ad litem to be appointed in this case. The previous two guardians ad litem had moved to withdraw from their roles, and the probate court had granted those motions on December 3, 2019, and October 6, 2020, respectively.

On October 5, 2020, Judge Tucker held a hearing regarding discovery, scheduling, and pending motions. Judge Tucker discussed certain social-media postings regarding the case. In light of that discussion, on October 22, 2020, Judge Tucker entered an order with respect to "trial publicity" that, in pertinent part, provided:

"A. Each attorney in this matter shall strictly adhere to the requirements and limitations on extra-judicial statements set forth in Rule 3.6, Ala. R. Prof. C.

"B. So long as this matter is pending before this Court, no party and no counsel of record for a party shall make any false statement or publish any post containing any false statement, about any other party or this matter on social media or in statements to traditional or electronic media; and

"C. The attorneys for each party to this matter shall certify in writing to this Court within five (5) days of this Order that they have provided a copy of this Order to their respective clients."

On December 8, 2020, Judge Tucker held a hearing on what he described as "the petition in regard to the final settlement of the conservator." In that hearing, Ms. Bashinsky's counsel argued:

"This judgment was vacated. It was voided by the Alabama Supreme Court. And it's as if it didn't take place. So there -- there's a nullity. No appointments, no legal fees, no court costs should have been paid. I'm not against lawyers getting paid; not against Mr. Hawley getting paid if he's justified. But it ought to come out of the petitioners, who started this and who created the void situation; not the estate. The Court went on

11

to say that a void judgment has absolutely no legal force or effect."

On December 11, 2020, the probate court entered what it styled a "Decree on Final Settlement" concerning Hawley's service as temporary guardian and conservator. That order provided:

"This cause coming before the Court to be heard on December 8, 2020, for examination and auditing of the account heretofore filed by Gregory H. Hawley, Esq., as Conservator of the Estate of Joann F. Bashinsky, a Protected Person, as final settlement of his conservatorship, being present in Court Attorneys for Petitioner, Attorneys for Respondent, Attorneys for Landon Ash, Court-appointed Guardian ad Litem, Ken Guin, conservator Gregory H. Hawley, Esq., and his attorneys. Gregory H. Hawley as conservator moving the court to proceed with said final settlement.

"It appearing to the Court from pleadings and proof that due notice of the time and nature of said settlement has been given in strict accordance with the law, and Melissa McCay, as Attorney in Fact for Ohio Casualty Insurance Company, as surety, having accepted service and waived notice of said settlement hearing. The Honorable Gregory H. Hawley Esq., who was heretofore appointed to act as Guardian and Conservator of JoAnn F. Bashinsky an alleged incapacitated person, upon application of Mr. Hawley, for Conservators Final Settlement and the Respondent objecting to the Final Settlement and denying the correctness of said account and insisting that strict proof be made as to the correctness of said account. Upon pleadings and proof, review of the Final Settlement by the Jefferson County accountant, Daniel Nash and testimony of Gregory H. Hawley Esq., with no other witness being presented by the Petitioners or Respondent and the court having examined and audited  said account for final

12

settlement and considered the testimony and  pleadings filed regarding said final settlement.

"It is Hereby Ordered, Adjudged and Decreed as follows:

"The Court finds that the said Gregory H. Hawley as conservator, is chargeable with receipts in the sum of $2,027,347.94 as shown by his account of the assets received by him and that he is entitled  to credits for monies paid out in and about the conservatorship and for the support and maintenance of JoAnn F. Bashinsky in the amount of $1,464,083.08, further access to accounts in the amount of $563,264.86 was returned to Ms. Bashinsky upon the ruling by the Alabama Supreme Court ordering the temporary guardian and conservator to account for all Ms. Bashinsky's funds and property and to dismiss the emergency petition.

"The court with no witness disputing said accounting, finds that said accounting and vouchers are accepted and allowed and ordered recorded. It is further ordered that the cost of the proceeding be and is hereby taxed against the estate. The conservator is awarded a fee of Eighty-Six Thousand ($86,000.00) Dollars for his service in said case, along with reimbursement of $1,037.02 paid by him to Source One Legal copy. That an attorney fee due to Sirote & Permutt PC., in representation of Mr. Hawley as the Conservator of the estate in the amount of $80,083.15, is to be paid as costs of the estate. Further that the Guardian and Conservator, Gregory H. Hawley and the Surety Ohio Casualty Insurance Company are hereby discharged and relieved from all further liability."

(Emphasis added.)

On January 3, 2021, Ms. Bashinsky died. Shortly thereafter, Tamera Erskine was named personal representative of the estate of

13

Ms. Bashinsky. On January 4, 2021, Guin filed a "Court Representative Fee Petition" that provided a list of his expenses and his hours spent in his capacity as guardian ad litem. On January 5, 2021, counsel for Ms. Bashinsky filed a suggestion of death and requested that "this action … be dismissed." On January 8, 2021, McKleroy and Townsend filed a memorandum in opposition to the motion to dismiss and, along with that memorandum: (1) a motion to substitute Erskine, the personal representative of Ms. Bashinsky's estate, for Ms. Bashinsky; (2) a motion for sanctions against Ash for allegedly violating the October 22, 2020, order concerning trial publicity; and (3) a motion seeking payment of attorney fees stemming from the litigation of the emergency petition.

On January 11, 2021, Judge Tucker entered an order requiring "[t]he Estate of Joann Bashinsky" to pay Guin $56,035.75. On January 22, 2021, Guin filed a motion to withdraw as guardian ad litem because of Ms. Bashinsky's death. Judge Tucker granted that motion on the same day. Also on January 22, 2021, Judge Tucker entered an amended order concerning Guin's fee, and he again awarded Guin $56,035.75 to be paid by "[t]he Estate of Joann Bashinsky." The amended order further stated:

"C. Pursuant to [Ala. R. Civ. P.] 54(b) this judgment is final as to the action and fees of J. Kenneth Guin, Jr. serving as Guardian ad Litem and Court Representative, there is no just reason for delay of entry of this final judgment as to J. Kenneth Guin, Jr. serving as Guardian ad Litem and Court Representative."

In all other respects, the amended order was essentially identical to Judge Tucker's January 11, 2021, order.

On March 5, 2021, Ms. Bashinsky's attorneys filed a "Notice of Substitution of Party for Purposes of Appeal Only," advising the probate court that,

"pursuant to Rule 25, Ala. R. Civ. P., … Tamera K. Erskine, as Personal Representative for the Estate of Joann F. Bashinsky …. wishes to take an appeal in this case to the Alabama Supreme Court and, as such, gives this notice of the substitution of her for Joann Bashinsky in this matter for purposes of appeal only."

That same day, Erskine filed a notice of appeal seeking to challenge: (1) Judge Tucker's December 11, 2020, order awarding fees to Hawley and his attorneys, a sum totaling $167,120.17, and (2) Judge Tucker's January 22, 2021, order awarding a fee of $56,035.75 to guardian ad litem Guin.

On March 8, 2021, Judge Tucker entered an order that purported to address several outstanding matters in this case that remained

15

pending following Ms. Bashinsky's death. First, the probate court dismissed as moot McKleroy and Townsend's petition for appointment of a permanent guardian and conservator for Ms. Bashinsky. On a related note, the probate court dismissed for lack of subject-matter jurisdiction, but without prejudice, McKleroy and Townsend's requests for the probate court to determine the validity of: (1) Ms. Bashinsky's termination of Townsend's employment with her; (2) Ms. Bashinsky's termination of McKleroy's appointment as her attorney-in-fact; and (3) Ms. Bashinsky's power of attorney granted to Erskine. However, Judge Tucker also concluded that he still had jurisdiction to entertain the motions that McKleroy and Townsend had filed on January 8, 2021. Specifically, he expressly declined to dismiss the motion for substitution of a party, the motion for sanctions against Ash, and the motion for payment of McKleroy and Townsend's attorney fees.

On March 23, 2021, McKleroy and Townsend filed a "Motion for Setting Hearing Date to Conclude Conservatorship Matter," seeking a date for arguing the outstanding motions that remained in the case. Judge Tucker set a hearing for April 29, 2021. On April 16, 2021, Ash filed a petition for a writ of mandamus with this Court arguing that the

16

probate court had no discretion to decide motions that were filed after it had lost subject-matter jurisdiction and that the only action the probate court could take after Bashinsky's death was to dismiss the entire action. On April 20, 2021, Erskine filed a petition for a writ of mandamus arguing that Ms. Bashinsky's death rendered the probate-court proceedings "non-justiciable," which, she said, deprived the probate court of jurisdiction in all matters related to those proceedings. On April 27, 2021, Judge Tucker stayed the proceedings. On October 18, 2021, Judge Tucker sua sponte reconsidered his order staying the proceedings, and he lifted the stay. That same day, Judge Tucker entered what he styled a "Final Order" in which he purported to amend the March 8, 2021, order and to dismiss "all issues that remained following the March 8, 2021, order ... WITH PREJUDICE."[7] (Capitalization in original.) On November 29, 2021, McKleroy and Townsend filed a notice of appeal challenging Judge Tucker's order dismissing the remaining issues.

---

[7]On October 18, 2021, Judge Tucker also entered an order recusing himself from this case. We assume that that order was entered after Judge Tucker's order purporting to lift the stay of proceedings and his order purporting to dismiss all pending issues in the case.

17

On December 15, 2021, this Court dismissed both Ash's and Erskine's petitions for a writ of mandamus. Ex parte Erskine (No. 1200505, Dec. 15, 2021), and Ex parte Ash (No. 1200497, Dec. 15, 2021). On February 28, 2021, McKleroy and Townsend filed a motion to dismiss their appeal -- appeal no. 1210153 -- with each party to bear their own costs. We now grant that motion and dismiss McKleroy and Townsend's appeal. Accordingly, the only issues now before this Court are those raised in Erskine's appeal regarding Judge Tucker's December 11, 2020, order awarding fees to Hawley and his attorneys and Judge Tucker's January 22, 2021, order awarding a fee to Guin.

## II. Analysis

In the December 8, 2020, hearing concerning Hawley's "Petition for Final Settlement of Conservatorship," Hawley testified:

> "Your honor, I tell people all the time, you know, I think we currently have 120 to 130 active conservatorship cases in the office. We probably handled a couple of hundred over the past few years. There's never been a case like this one. I hope there never is again a case like this one."

The rendition of facts supports Hawley's sentiment: this is an unusual, perhaps even sui generis, case born from an unfortunate set of circumstances that is highly unlikely to reoccur. Nonetheless, for better

or worse, Erskine's appeal presents issues that must be resolved. We will first address Erskine's appeal insofar as it challenges Judge Tucker's December 11, 2020, order awarding fees to Hawley and his attorneys. We will then turn to Erskine's appeal insofar as it challenges Judge Tucker's January 22, 2021, order awarding a fee to Guin.

A. The December 11, 2020, Order Pertaining to Hawley

Erskine contends that Judge Tucker's December 11, 2020, order awarding fees to Hawley and his attorneys exceeded this Court's mandate in Ex parte Bashinsky, which stated that the probate court was "to require the temporary guardian and conservator to account for all of Ms. Bashinsky's funds and property." 319 So. 3d at 1263. According to Erskine, "[t]his Court's mandate did not direct the Probate Court to hold a hearing on the accounting filed by the temporary conservator; it did not direct the Probate Court to award fees and/or costs to the temporary conservator; and it did not direct the payment of attorney fees incurred by the temporary conservator." Erskine's brief, p. 13. Erskine notes that this Court has stated that, "when an appellate court remands a case, the trial court's authority is limited to compliance with the directions provided by the appellate court; it does not have the authority to reopen

19

for additional testimony except where expressly directed to do so." Ex parte Shinaberry, 326 So. 3d 1037, 1043 n.3 (Ala. 2020). Erskine further contends that, even if this Court's mandate did authorize Judge Tucker to award fees to Hawley and his attorneys, the probate court lost jurisdiction to do so after it dismissed the emergency petition on August 28, 2020. See Erskine's brief, p. 13. Erskine also argues that Judge Tucker could not order Ms. Bashinsky's "estate" to pay fees to Hawley and his attorneys because, based on this Court's holding in Ex parte Bashinsky that Judge King's October 17, 2019, order granting an emergency petition was void due to violations of Ms. Bashinsky's statutory and due-process rights, no guardianship or conservatorship estate was ever created.

Hawley does not address most of Erskine's arguments. Instead, he contends that Erskine's appeal is due to be dismissed because she filed the appeal on March 5, 2021, challenging an order entered December 11, 2020, which was well outside the 42-day window for a timely appeal from a final judgment. Hawley contends that Judge Tucker's December 11, 2020, order was an appealable order under § 12-22-21(5), Ala. Code 1975, which provides:

"Appeal from the order, judgment or decree of the probate court may be taken by the party aggrieved to the circuit court or Supreme Court in the cases hereinafter specified. Appeals to the Supreme Court shall be governed by the Alabama Rules of Appellate Procedure, including the time for taking an appeal. Appeal to the circuit court in such cases shall be within the time hereinafter specified:

"....

"(5) After a final settlement, upon any order, judgment or decree, made on such settlement, or respecting any item or matter thereof, or any previous settlement or item, or matter thereof, within 42 days thereafter."

In other words, Hawley contends that the December 11, 2020, order was a "final settlement" of a temporary guardianship/conservatorship, which made it immediately appealable.

The fundamental problem with Hawley's argument is that in Ex parte Bashinsky we made it abundantly clear that no guardianship or conservatorship was ever created, and thus no "final settlement" could have been entertained or approved by Judge Tucker. In Ex parte Bashinsky, we unequivocally stated that "the representation and case-presentation rights afforded to a respondent in §§ 26-2A-102 and 26-2A-135[, Ala. Code 1975,] were applicable," that "[t]hose provisions, and Ms. Bashinsky's basic due-process rights, were egregiously violated,"

21

that "the hearing appointing a temporary guardian and conservator was a nullity," and that Judge King's "October 17, 2019, order appointing a temporary guardian and conservator for Ms. Bashinsky is void." 319 So. 3d at 1262, 1263. In other words, because basic due-process requirements were not followed, the probate court lacked the legal authority to order Hawley to assume control of Ms. Bashinsky's life decisions and personal assets. As Erskine observes in her appellate brief, a guardianship or conservatorship begins when a probate court grants a petition seeking one, not when the petition is filed or even when a guardian ad litem is initially appointed. This Court explained as much in the context of removing to a circuit court a guardianship or conservatorship for a minor:

> "Based upon the substantial similarity of the language of § 12-11-41[, Ala. Code 1975,] and the language of § 26-2-2[, Ala. Code 1975,] the reasoning that led us to the foregoing conclusions in [Ex parte ]Smith[, 619 So. 2d 1374 (Ala. 1993)], [Allen v. Estate of ]Juddine[, 60 So. 3d 852 (Ala. 2010)], and DuBose[ v. Weaver, 68 So. 3d 814 (Ala. 2011),] regarding § 12-11-41 now compels us to a comparable conclusion regarding § 26-2-2. The filing of a petition for letters of guardianship or conservatorship does not begin '[t]he administration or conduct of [the] guardianship or conservatorship'; rather, the probate court must act upon the petition before the guardianship or conservatorship may by subject to removal to the circuit court.[7] It likewise follows that, absent the existence

22

of a guardianship or conservatorship, the circuit court cannot remove '[t]he administration or conduct of [the] guardianship or conservatorship' from the probate court. Accordingly, as the Court of Civil Appeals concluded in Ex parte Coffee County Department of Human Resources, 771 So. 2d 485, 487 (Ala. Civ. App. 2000), after also noting the similarity between § 12-11-41 and § 26-2-2, 'the circuit court did not have jurisdiction to enter a removal order before the probate court had acted upon' the petition for letters of conservatorship.

"In the present case, James Sr. and Julie filed the guardianship proceeding requesting that the probate court determine whether Jo Ann is in need of a guardian or conservator. Although there have been numerous proceedings in the probate court concerning the question whether Jo Ann is incapacitated in such a manner that requires the appointment of a guardian or conservator, the probate court has not yet answered that question. Likewise, it has not entered an order concluding that Jo Ann is in need of a guardian or conservator or appointing a guardian or conservator. See Ala. Code 1975, § 26-2A-105(b) ('The court may appoint a guardian as requested if it is satisfied that the person for whom a guardian is sought is incapacitated and that the appointment is necessary or desirable as a means of providing continuing care and supervision of the person of the incapacitated person.'); Ala. Code 1975, § 26-2A-135(f) ('After hearing, upon finding that a basis for the appointment of a conservator or other protective order has been established, the court shall make an appointment or other appropriate protective order.'). In other words, the probate court has not entered an order creating a guardianship or conservatorship for Jo Ann. Logically, because no guardianship or conservatorship has been created for Jo Ann, there is no 'administration or conduct' of such guardianship or

23

conservatorship to be removed from the probate court to the circuit court.

_____

"[7]The probate court has subject-matter jurisdiction to determine whether a minor is in need of a guardian or conservator and whether a person is incapacitated and is in need of a guardian or conservator. See Ala. Code 1975, § 26-2A-31. The filing of a petition that raises the possibility of the necessity for the appointment of a guardian or conservator, however, is not the equivalent of creating a guardianship or conservatorship that must be 'administ[ered] or conduct[ed].'

"...."

Ex parte Casey, 88 So. 3d 822, 829-30 (Ala. 2012) (footnote 8 omitted and emphasis added).

Applying the understanding provided in Ex parte Casey to the situation in this case, it is clear that no guardianship or conservatorship that must be administered or conducted was created because, as we held in Ex parte Bashinsky, the hearing addressing the emergency petition was a nullity and the order appointing Hawley was void. The basis of our decision was that no circumstances constituting an "emergency" upon which to predicate the appointment of a temporary guardian and conservator for Ms. Bashinsky were ever alleged or proven to exist, and so the provisions in the Alabama Uniform Guardianship and Protective

24

Proceedings Act ("the AUGPPA"), § 26-2A-1 et seq., Ala. Code 1975, for holding an ex parte hearing to appoint a temporary guardian and conservator did not apply. See Ex parte Bashinsky, 319 So. 3d at 1262-63. Absent such an emergency, the probate court's authority to affect Ms. Bashinsky's person and property depended upon the existence of certain facts that were never established in this case, namely, her incompetence and her need for protection. The lack of a properly supported underlying finding of incompetence prevented the probate court from possessing legitimate power to order Hawley to assume control of Ms. Bashinsky's assets without her consent. In short, Hawley never possessed valid legal authority to assume control of Ms. Bashinsky's life decisions and personal assets because the probate court did not adhere to the legal requirements necessary to bestow such authority.

Logically, there can be no "final settlement" of a nonexistent conservatorship. Indeed, § 26-5-7, Ala. Code 1975, provides, in part, that, "[o]n the ... expiration of [the conservator's] authority ..., a final settlement of the conservatorship must be made ...." (Emphasis added.) Similarly, § 26-5-33, Ala. Code 1975, provides, in part, that, "[o]n the

termination of a conservatorship ... <u>on the expiration of [the conservator's] authority</u> or otherwise, the court of probate may issue process requiring the conservator to appear ... and file his or her accounts and vouchers for a final settlement." (Emphasis added.) Hawley never had valid legal authority as a conservator, and so no "final settlement" of a conservatorship could be ordered.

As authority for Judge Tucker's approval of his "Petition for Final Settlement of Conservatorship," Hawley points to this Court's mandate in the conclusion of <u>Ex parte Bashinsky</u> that the probate court "require the temporary guardian and conservator to account for all of Ms. Bashinsky's funds and property." 319 So. 3d at 1263. Perhaps, to be clearer, we could have said "<u>purported</u> temporary guardian and conservator," but we did state that Judge King's October 17, 2019, order appointing Hawley temporary guardian and conservator was "void," which clearly meant that Hawley never possessed valid legal authority over Ms. Bashinsky's person or assets. The "accounting" we required was for the purpose of having Hawley establish his own liability <u>to Ms. Bashinsky</u> because he held control over Ms. Bashinsky's property under color of law -- but absent her consent -- from October 17, 2019, to

August 28, 2020, not for the purpose of having Hawley account to the probate court for a conservatorship. In other words, the accounting was a matter of equity,[8] not a matter of a statutory "final settlement" of a conservatorship.[9] We never said anything about a "final settlement," nor could we have done so, because we ruled that the purported temporary guardianship and conservatorship was void, and the petition for a permanent guardian and conservator had not been adjudicated in any way. Consequently, the fact that § 12-22-21(5) provides that an order on "final settlement" is appealable is irrelevant to the circumstances in this case.[10]

---

[8]Section 26-2A-3, Ala. Code 1975, provides that "the principles of law and equity supplement" the provisions of the AUGPPA.

[9]In his December 11, 2020, order, Judge Tucker did not purport to act based on the probate court's equitable powers, but, even if he had, forcing the decedent estate of the one unquestionably innocent party in this matter to pay Hawley and his attorneys fees in the absence of a supported finding that Ms. Bashinsky was incompetent does not strike us as particularly equitable.

[10]Because no guardianship or conservatorship was at issue, the provision in Ala. Code 1975, § 26-5-1, that "[t]he court of probate from which the appointment of a conservator is derived has jurisdiction of the settlement, partial or final, of the accounts of the conservator" is also irrelevant.

For Judge Tucker's December 11, 2020, order to be appealable, therefore, it would have to have been otherwise final. In his motion to dismiss Erskine's appeal, Hawley did argue that Judge Tucker's December 11, 2020, order was appealable under § 12-22-20, Ala. Code 1975, which provides:

> "An appeal lies to the circuit court or Supreme Court from any final decree of the probate court, or from any final judgment, order or decree of the probate judge; and, in all cases where it may of right be done, the appellate court shall render such decree, order or judgment as the probate court ought to have rendered."

However, the difficulty with applying § 12-22-20 is that the December 11, 2020, order plainly was not a "final judgment" because there were several other outstanding issues in this case at the time Judge Tucker entered that order, including the pending petition for a permanent guardianship and conservatorship. The litany of orders Judge Tucker subsequently entered underscores the lack of finality of his December 11, 2020, order.[11]

---

[11]As our rendition of facts relates, Judge Tucker subsequently entered: (1) the January 11, 2021, order awarding a fee to guardian ad litem Guin; (2) the January 22, 2021, amended order reiterating the award to guardian ad litem Guin; (3) the March 8, 2021, order that purported to decide several outstanding issues; and (4) the October 18, 2021, order that Judge Tucker labeled a "Final Order" in which he purported to amend the March 8, 2021, order and to dismiss "all issues

Moreover, Judge Tucker did not certify his December 11, 2020, order as final and appealable pursuant to Rule 54(b), Ala. R. Civ. P. Thus, the record on appeal plainly refutes the notion that the December 11, 2020, order was a "final judgment" under § 12-22-20.[12]

Based on the foregoing, the December 11, 2020, order was, at most, an interlocutory order, not a final judgment that was appealable under § 12-22-21(5). A nonfinal judgment cannot support an appeal. See, e.g., Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So. 2d 354, 362 (Ala. 2004) ("'"When it is determined that an order appealed from is not a final judgment, it is the duty of the Court to dismiss the appeal ex mero motu."'" (quoting Tatum v. Freeman, 858 So. 2d 979, 980 (Ala. Civ. App. 2003), quoting in turn Powell v. Republic Nat'l Life Ins. Co., 293 Ala. 101, 102, 300 So. 2d 359, 360 (1974))). Because the order appealed from was not final, it is irrelevant whether Erskine's appeal was untimely. See, e.g., Dyas v. Stringfellow, 333 So. 3d 128, 132 & n.3 (Ala. 2021)

_____

that remained following the March 8, 2021, order … WITH PREJUDICE."

[12]Indeed, in his appellate brief, Hawley did not cite § 12-22-20 as authority that Judge Tucker's December 11, 2020, order was final and appealable, probably because this Court, on October 1, 2021, had denied his motion to dismiss without comment.

(dismissing appeal because "no valid, final judgment" had been entered by the trial court and noting that, therefore, this Court would "pretermit discussion of [the appellee's] argument that the appeal should be dismissed as to him because the plaintiffs did not file a timely notice of appeal"); Ex parte Harrington, 289 So. 3d 1232, 1234 (Ala. 2019) (concluding that a trial court's judgment was nonfinal and could not support an appeal in lieu of assessing whether the appeal was untimely). Accordingly, Erskine's appeal, insofar as it challenges Judge Tucker's December 11, 2020, order, is due to be dismissed as having been taken from a nonfinal judgment.

B. The January 22, 2021, Order Pertaining to Guin

Erskine briefly argues that Ms. Bashinsky's death deprived the probate court of subject-matter jurisdiction to award a fee to guardian ad litem Guin. See Erskine's brief, p. 19. As our rendition of the facts noted, on October 16, 2020, Judge Tucker appointed Guin as guardian ad litem for Ms. Bashinsky with respect to the petition for a permanent guardianship and conservatorship, which was still pending in the probate court at that time. Because § 26-2A-52, Ala. Code 1975, which is part of the AUGPPA, provides that, "[a]t any point in a proceeding, a

court may appear a guardian ad litem to represent the interest of a minor or other person if the court determines that representation of the interest otherwise would be inadequate," Judge Tucker clearly had jurisdiction to make Guin's appointment. Then Ms. Bashinsky unexpectedly died on January 3, 2021, thus obviously ending any need for a proceeding concerning her capacity. Erskine argues:

> "The Probate Court lost subject-matter jurisdiction upon the death of Joann Bashinsky and/or the filing of a Suggestion of Death and could do nothing more except to dismiss this action. … Therefore, [Judge Tucker's] award of fees to the guardian ad litem is void for lack of jurisdiction and must be reversed."

Erskine's brief, pp. 19-20. Thus, Erskine appears to be questioning whether Judge Tucker had ancillary jurisdiction after Ms. Bashinsky's death to award Guin any fee.

However, the merits of the foregoing argument are not properly before us because Judge Tucker's January 22, 2021, order was not appealable. As we noted in the rendition of the facts, that order contained the formulaic language of a Rule 54(b), Ala. R. Civ. P., order, but a proper Rule 54(b) order is one "where the court has completely disposed of one of a number of claims, or one of multiple parties, and has made an express determination that there is no just reason for delay." Committee

31

Comments on 1973 Adoption of Rule 54. The January 22, 2021, order did not dispose of a claim or any actual party in this case. Moreover, a Rule 54(b) certification is not proper if "'"the issues in the claim being certified and a claim that will remain pending in the trial court '"are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results."'"'" Fuller v. Birmingham-Jefferson Cnty. Transit Auth., 147 So. 3d 907, 911 (Ala. 2013) (quoting Lighting Fair, Inc. v. Rosenberg, 63 So. 3d 1256, 1263 (Ala. 2010) (other citations omitted)). In Erskine's "Statement of the Issues" attached to her notice of appeal, she listed one issue as:

> "Whether the death of Joann Bashinsky on January 3, 2021, and the January 5, 2021, filing of a Suggestion of Death and Motion to Dismiss deprived the probate court of subject-matter jurisdiction and renders its January 22, 2021, final judg[ment] awarding attorney fees and costs to the guardian ad litem, Ken Guin, void?"[13]

Unsurprisingly, Erskine made this exact same argument with respect to all the remaining motions before the probate court in her motion to dismiss that Judge Tucker ruled on in his March 8, 2021, order. Thus,

---

[13]Erskine essentially repeats this statement in her "Statement of the Issues" in her appellate brief. See Erskine's brief, p. 4.

there clearly was an intertwining issue with respect to the issue raised on appeal and the matters still purportedly before Judge Tucker at the time he purported to certify the January 22, 2021, order as final pursuant to Rule 54(b). Consequently, the probate court's January 22, 2021, order was not a proper Rule 54(b) order, and therefore, it was not an appealable order.[14] See, e.g., Dzwonkowski, 892 So. 2d at 361 ("[T]he trial court recited the formula for certification of a judgment pursuant to Rule 54(b), Ala. R. Civ. P. However, '[n]ot every order has the requisite element of finality that can trigger the operation of Rule 54(b).' Goldome Credit Corp. v. Player, 869 So. 2d 1146, 1147 (Ala. Civ. App. 2003).").

Moreover, Judge Tucker's March 8, 2021, order did not resolve that intertwining of issues even though the probate court purported to dismiss the request for a permanent guardian and conservator as well as

"other claims which hinge on a determination of Mrs. Bashinsky's incapacity or susceptibility to undue influence,

---

[14]The fact that neither Erskine nor Guin raised this issue does not impede us from reaching this conclusion. See, e.g., Fuller v. Birmingham-Jefferson Cnty. Transit Auth., 147 So. 3d 907, 911 (Ala. 2013) ("[N]one of the parties argues on appeal that the trial court's certification of its … order as final under Rule 54(b) was inappropriate. However, jurisdictional matters, such as whether an order is final so as to support an appeal, are of such importance that an appellate court may take notice of them ex mero motu.").

namely, the validity of Mrs. Bashinsky's purported October 2019 termination of Petitioner Patty Townsend, the validity of Mrs. Bashinsky's purported October 2019 termination of her appointment of Petitioner John P. McKleroy, Jr. as her attorney-in-fact, or the request for a declaration as to the validity of an October 2019 Power of Attorney executed by Mrs. Bashinsky."

This is because on March 5, 2021, Erskine appealed Judge Tucker's December 11, 2020, order and his January 22, 2021, order. When an appeal is taken, unless it is from a proper Rule 54(b) order, the appeal divests the lower court of jurisdiction over the case until the appellate court provides a disposition of the appeal -- even if the appeal is premature, i.e., from a nonfinal judgment. See, e.g., Dyas, 333 So. 3d at 132 ("[T]he plaintiffs' premature notice of appeal divested the trial court of jurisdiction to rule upon the remaining claims in the case. ... Therefore, the trial court's January 17, 2020, order was a nullity. ... Accordingly, the trial court has not effectively adjudicated all the claims against all the parties in this case, and there is no valid, final judgment for this Court to review."); Williams v. Mari Props., LLC, 329 So. 3d 1237, 1240 (Ala. 2020) ("[W]hen a final judgment is appealed from the probate court ..., the probate court is without jurisdiction to proceed further. This is also true even if the order that is appealed, in actuality, is a nonfinal order.");

34

Busby v. Lewis, 993 So. 2d 31, 34 (Ala. Civ. App. 2008) (holding that a trial court lacked jurisdiction to enter a judgment resolving pending claims while the action was before this court on appeal, despite the fact that the appeal had been prematurely taken from an interlocutory order, citing Etheredge v. Genie Indus., Inc., 632 So. 2d 1324, 1325 (Ala. 1994)). Thus, because this case was appealed on March 5, 2021, Judge Tucker had no jurisdiction to enter the March 8, 2021, order, and that order is a nullity. See, e.g., Harden v. Laney, 118 So. 3d 186, 187 (Ala. 2013) ("Because jurisdiction over Harden's appeal rested in this Court when the trial court entered its order purporting to strike Harden's notice of appeal, the trial court's order is a nullity ....").

In fact, the same is true of Judge Tucker's October 18, 2021, order that was labeled a "Final Order" in which he purported to amend the March 8, 2021, order and to dismiss "all issues that remained following the March 8, 2021, order … WITH PREJUDICE." The probate court had no jurisdiction to enter the October 18, 2021, order because jurisdiction of the case rests with this Court until it has been determined otherwise. See, e.g., Foster v. Greer & Sons, Inc., 446 So. 2d 605, 608-09 (Ala. 1984) (explaining that, until an appellate court makes a determination

regarding its own jurisdiction, the appellate court and trial court are "bound by the presumption that [the appellate court has] jurisdiction," citing Thames v. Gunter-Dunn, Inc., 365 So. 2d 1216 (Ala. 1979)), overruled on other grounds by Ex parte Andrews, 520 So. 2d 507 (Ala. 1987).

Based on the foregoing, the January 22, 2021, order was not a final, appealable judgment because Judge Tucker's certification of finality under Rule 54(b) was ineffective, and he lacked jurisdiction to enter any orders after Erskine's appeal was filed. Because the January 22, 2021, order was not a final judgment, Erskine's appeal, insofar as it challenges that order, is due to be dismissed as having been taken from a nonfinal judgment.

## III. Conclusion

McKleroy and Townsend's motion to dismiss appeal no. 1210153 is granted. As to Erskine's appeal, appeal no. 1200401, Judge Tucker's December 11, 2020, order awarding fees to Hawley and his attorneys was not a "final settlement" of a guardianship or conservatorship, and it was not otherwise a final judgment, and therefore it was not an appealable order. Judge Tucker's January 22, 2021, order awarding a fee to Guin

was not appropriate for Rule 54(b) certification because it did not completely dispose of a claim or a party and it involved an issue that was intertwined with issues that remained before the probate court. Neither of those orders became final by virtue of Judge Tucker's March 8, 2021, order or his October 18, 2021, order because those latter orders were entered after Erskine's March 5, 2021, appeal divested the probate court of jurisdiction in this case. Therefore, Erskine's appeal is dismissed, and the cause is remanded for the probate court to enter a proper final judgment in this case.

1200401 -- APPEAL DISMISSED.

Bryan, Sellers, Mendheim, and Stewart, JJ., concur.

Parker, C.J., concurs in part and concurs in the result, with opinion.

Bolin, J., dissents, with opinion.

Shaw, Wise, and Mitchell, JJ., recuse themselves.

1210153 -- APPEAL DISMISSED.

Parker, C.J., and Bolin, Bryan, Sellers, Mendheim, and Stewart, JJ., concur.

Shaw, Wise, and Mitchell, JJ., recuse themselves.

PARKER, Chief Justice (concurring in part and concurring in the result in appeal no. 1200401).

I concur in all of the main opinion except footnote 9's comment on the potential equity of Gregory H. Hawley's request for compensation from the estate, an issue that is not before us because we are dismissing that appeal. I also note that, when this case returns to the probate court, Hawley is free to argue that he is entitled to compensation as a trustee in invitum. See § 26-2A-3, Ala. Code 1975; Moody v. Bibb, 50 Ala. 245, 245-49 (1874); cf. Mitchell v. Parker, 227 Ala. 676, 678, 151 So. 842, 843 (1933); 90A C.J.S. Trusts § 637 (2020).

BOLIN, Justice (dissenting in appeal no. 1200401).

I respectfully disagree with the main opinion's conclusions regarding the import of the Jefferson Probate Court's orders of December 11, 2020, and January 22, 2021. Therefore, in appeal no. 1200401, I dissent. Although I believe that the appeal should be dismissed in part, insofar as it challenges the December 11, 2020, order, I do so because the appeal from that order was untimely, not, as the main opinion concludes, because that order was not sufficiently final and appealable. Insofar as the appeal arises from the January 22, 2021, order, I believe that that order was properly certified as final pursuant to Rule 54(b), Ala. R. Civ. P., and I would affirm that order on the merits.

In appeal no. 1200401, Tamera Erskine, as the personal representative of the estate of Joann Bashinsky ("Ms. Bashinsky"), deceased, appeals from two orders of the probate court entered after this Court's decision in Ex parte Bashinsky, 319 So. 3d 1240 (Ala. 2020). In the first order -- a "Decree on Final Settlement" entered on December 11, 2020 -- the probate court awarded Gregory H. Hawley a temporary conservator's fee and awarded attorneys' fees to the law firm representing Hawley. In the second order, entered on January 22, 2021,

39

the probate court awarded J. Kenneth Guin, Jr., who had been appointed the successor guardian ad litem for Bashinsky in relation to a pending petition seeking the appointment of a permanent guardian and conservator for Ms. Bashinsky, a fee for his services.

Ms. Bashinsky died on January 3, 2021, while the petition for a permanent guardian and conservator was still pending. On January 5, 2021, Ms. Bashinsky's attorneys filed a suggestion of death and moved to dismiss the case. On March 5, 2021, Erskine, who had been appointed the personal representative of Ms. Bashinsky's estate, filed a notice of appeal, challenging the December 11, 2020, and January 22, 2021, orders.

## The December 11, 2020, Order

Erskine argues that the probate court lacked jurisdiction to enter its December 11, 2020, order because, she asserts: (1) the probate court exceeded this Court's mandate in Ex parte Bashinsky by entering the order; (2) the probate court lost subject-matter jurisdiction on August 28, 2020, when it dismissed an emergency petition seeking the appointment of a temporary guardian and conservator for Ms. Bashinsky; and (3) the probate court's order of October 17, 2019, appointing Hawley as Ms.

40

Bashinsky's temporary guardian and conservator was declared void in Ex parte Bashinsky and, thus, no estate was ever established that could be ordered to pay a conservator's fee. Hawley responds that Erskine's appeal is untimely to the extent that it challenges the December 11, 2020, order and that the probate court did not exceed this Court's mandate in Ex parte Bashinsky.

At the outset, I note that John P. McKleroy, Jr., and Patty Townsend filed the emergency petition for a temporary guardian and conservator and the petition for a permanent guardian and conservator, pursuant to Ala. Code 1975, § 26-2A-102 and § 26-2A-135, which are part of the Alabama Uniform Guardianship and Protective Proceedings Act ("AUGPPA"), Ala. Code 1975, § 26-2A-1 et seq. Section 26-2A-31, Ala. Code 1975, gives a probate court jurisdiction over guardianship and protective proceedings, § 26-2A-31(a), with the "power to make order[s], judgments, and decrees and take all other action necessary and proper to administer justice in the matters that come before it," § 26-2A-31(b), and further provides that "[n]o provision of [the AUGPPA] shall be construed to void, abate, or diminish the powers of equity jurisdiction, when invoked, heretofore or hereafter granted by statute to certain probate

41

courts," § 26-2A-31(e), which would include the Jefferson Probate Court in this matter. Section 26-5-1, Ala. Code 1975, gives a probate court appointing a conservator jurisdiction over "settlement, partial or final, of the accounts of the conservator."

Section 26-2A-107, Ala. Code 1975, provides for the appointment of a temporary guardian for a protected person when there is an "emergency" situation. Although the AUGPPA does not expressly provide for temporary orders to protect the property and business interests of a protected person, §§ 26-2A-30, 26-2A-130, 26-2A-136, and 26-2A-137, Ala. Code 1975, allow for the appointment of a special or temporary conservator to protect such interests. See Ex parte Jamison, 336 So. 3d 175 (Ala. 2021). Section 26-2A-33, Ala. Code 1975, adopts the Alabama Rules of Civil Procedure and the Alabama Rules of Appellate Procedure to govern AUGPPA proceedings involving incapacitated persons, except when the AUGPPA specifically provides otherwise or when doing so would be inconsistent with the AUGPPA. Accordingly, a proper party may seek emergency protection for the benefit of an incapacitated person, as well as for an incapacitated person's property and business interests.

I agree with Hawley that Erskine's appeal is untimely. The probate court is a court of general and original jurisdiction regarding the administration of guardianships and conservatorships. See Art. VI, § 144, Ala. Const. 1901 (Off. Recomp.)[15]; § 12-13-1(b)(6) and (b)(7), Ala. Code 1975; and § 26-2A-31(a), Ala. Code 1975.

Section 12-22-21(5), Ala. Code 1975, provides:

"Appeal from the order, judgment or decree of the probate court may be taken by the party aggrieved to the … Supreme Court in the cases hereinafter specified. Appeals to the Supreme Court shall be governed by the Alabama Rules of Appellate Procedure, including the time for taking an appeal. ...

"....

"(5) After a final settlement, upon any order, judgment or decree, made on such settlement, or respecting any item or matter thereof, or any previous settlement or item, or matter thereof ...."

Rule 4(a)(1), Ala. R. App. P., provides that,

---

[15]In Ex parte Casey, 88 So. 3d 822, 827 n.4 (Ala. 2012), this Court explained that the use of the term guardianship in § 144 might have referred to either the guardianship of the person of a minor or an incapacitated person, which is still referred to as the guardianship under the AUGPPA, or the guardianship of the property (i.e., the estate) of a minor or an incapacitated person, which is referred to as a conservatorship under the AUGPPA.

"[e]xcept as otherwise provided herein, in all cases in which an appeal is permitted by law as of right to the supreme court …, the notice of appeal required by Rule 3[, Ala. R. App. P.,] shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from ...."

Section 12-22-21 sets out certain probate-court orders that are immediately appealable. To promote immediate appellate review of certain orders entered in the course of probate-court proceedings, the legislature has provided for appeals of certain orders that are not final in the traditional sense, and such orders do not need to be certified as final pursuant to Rule 54(b), Ala. R. Civ. P. See Moseley v. Cook, 150 So. 3d 169, 171 n.3 (Ala. 2014)(Moore, C.J., dissenting)("This express statutory authority [§ 12-22-21] renders a Rule 54(b) certification of finality unnecessary."); cf. Brown v. Brown, 21 So. 3d 1 (Ala. Civ. App. 2009)(holding that testator's son had the right to appeal the circuit court's summary judgment determining the validity of the will preferred by testator's widow even though § 12-22-21(1) provides for appeal from a probate court's nonfinal order on a contest challenging the validity of a will but does not specifically provide a right to appeal a similar order entered by a circuit court).

44

Additionally, in Ex parte Bashinsky, this Court's decision was final as to the matters before it, and further proceedings had to be executed according to our mandate. Ex parte Edwards, 727 So. 2d 792, 794 (Ala. 1988)(noting that an appellate court's decision is final as to all matters before it, becomes the law of the case, and must be executed according to the appellate mandate). A trial court has a duty to comply with the mandate given by an appellate court, Dzwonkowski v. Sonitrol of Mobile, Inc., 87 So. 3d 1172 (Ala. 2011), and may not exceed the scope of an appellate court's mandate, Honea v. Raymond James Fin. Servs., Inc., 279 So. 3d 568 (Ala. 2018). A trial court can neither address issues already decided by an appellate court's decision in the case nor act beyond the appellate court's express mandate. Id.

In this case, the probate court appointed Hawley as temporary guardian and conservator, and in Ex parte Bashinsky, this Court ordered the probate court to require Hawley to account for Ms. Bashinsky's funds and property. Our mandate cannot be couched in terms of requiring something less than Hawley's statutory duty to complete a final accounting of Ms. Bashinsky's property and financial interests, which

Hawley had been conserving, to protect Ms. Bashinsky, pursuant to an order of the probate court.

Moreover, looking at the substance of the December 11, 2020, order, that order was a final settlement contemplated by 12-22-21(5). Title 26, Chapter 5, of the Alabama Code addresses the settlements of conservator's accounts. Section 26-5-7, Ala. Code 1975, sets out when a final settlement is required. Specifically, § 26-5-7 provides, in pertinent part: "On the ... expiration of [the conservator's] authority ..., a final settlement of the conservatorship must be made ...." (Emphasis added.) Section 26-5-8, Ala. Code 1975, provides that the conservator must file a full account of the conservatorship accompanied by vouchers and verified by affidavit. Section 26-5-9, Ala. Code 1975, requires the probate court to appoint a day for determining whether to approve the final settlement and to give notice to the conservator and the protected person. Here, the probate court properly held a hearing on the final settlement of the temporary conservatorship, as required by statute. Ms. Bashinsky was given notice of the hearing and was represented by counsel. Section 26-5-10, Ala. Code 1975, requires the probate court to

"examine the vouchers and to audit and state the account, requiring evidence in support of all such vouchers or items of

46

> the account as may be contested or as may not on examination appear to the court to be just and proper, such evidence to be taken by affidavit or in any other legal mode."

(Emphasis added.) Here, the probate court heard testimony from an accountant and from Hawley. Section 26-5-11, Ala. Code 1975, which is titled, in part, "Final settlement generally," requires the probate court to render its decree of the settlement, specifically stating that, "[a]fter the examination of the vouchers and the audit and statement of the account, the court must render a decree passing the same ...." (Emphasis added.)

Section 26-5-13, Ala. Code 1975, allows for fees or other compensation and attorney's fees for which a conservator "is entitled from an estate up to the time of [any annual, partial, or final] settlement ...." Section 26-5-16, Ala. Code 1975, provides that a conservator "is entitled for his or her services to reasonable compensation" as well as "an allowance ... of actual expenses necessarily incurred." Section 26-5-33, Ala. Code 1975, provides that, "[o]n the termination of a conservatorship ... on the expiration of [the conservator's] authority or otherwise, the court of probate may issue process requiring the conservator to appear ... and file his or her accounts and vouchers for a final settlement."

(Emphasis added.) Section 26-5-15, Ala. Code 1975, provides, in pertinent part:

> "Whenever any conservator shall file any annual, partial, or final settlement in any court having jurisdiction thereof, the court shall, at the request of such conservator, require that notice thereof be given in the same manner as required by law in cases of final settlements. Any order or decree of the court on such settlement after such notice shall be final and conclusive as to all items of receipts and disbursements and other transactions and matters shown therein and as to all fees and compensation fixed or allowed to such conservator and attorney and appeals therefrom shall and must be taken in the manner provided for from any other final decrees of such court."

(Emphasis added.)

In this case, Hawley's accounting of Ms. Bashinsky's assets was examined and audited by the probate court, and the probate court entered an order of final settlement, accepting and passing on the accounting and audit and discharging both Hawley and his surety. The probate court's order left nothing further for either Hawley or the probate court to do or accomplish in the settlement of the temporary guardianship and conservatorship. The term "final settlement" signifies that " 'nothing remain[s] to be done by an administrator or by the court in the settlement of [the] estate.' " Boyd v. Franklin, 919 So. 2d 1166, 1173 (Ala. 2005)

48

(quoting Stevens v. Tucker, 87 Ind. 109, 115 (1882)). The probate court's final order as to Hawley's tenure as temporary conservator was entered on December 11, 2020. Erskine filed her notice of appeal on March 5, 2021, outside of the 42-day time limit for an appeal. Without a timely filed notice of appeal, an appellate court has no jurisdiction to consider any issues, even an issue over which the trial court had no subject-matter jurisdiction. Erskine's argument that subject-matter jurisdiction may be challenged at any time is misguided here, because the filing in which it is challenged must nevertheless be timely for the reviewing court to have the jurisdiction to consider any argument the filing contains. Beatty v. Carmichael, 293 So. 3d 874, 877 (Ala. 2019).

Moreover, even if Erskine had timely appealed, a circumstance that clearly is absent, the probate court did not err in awarding fees to Hawley. Erskine argues that there was no estate created from which to pay Hawley's fees because, as this Court held in Ex parte Bashinsky, the probate court's order establishing the temporary guardianship and conservatorship was a nullity. However, this Court held that the probate court's order was a nullity because there had not been a proper emergency hearing that bestowed and safeguarded the statutory and

49

due-process protections to which Ms. Bashinsky was entitled and because there had been no showing that Ms. Bashinsky was at immediate risk of sustaining substantial harm to her health, safety, or welfare.  It is clear from this Court's discussion in Ex parte Bashinsky that the probate court had not addressed a situation that constituted an emergency under the AUGPPA.   319 So. 3d at 1257-60 (discussing what constitutes an emergency under the AUGPPA).  Nevertheless, after the probate court appointed Hawley and ordered him to act on Ms. Bashinsky's behalf to protect her and her assets, Hawley served both Ms. Bashinsky and her estate in good faith in accordance with the court order appointing him as temporary guardian and conservator. Hawley accepted the appointment at a time when he was serving as the probate-court-appointed general conservator for Jefferson County, see § 26-2-26, Ala. Code 1975, and as a lawyer, i.e., an officer of the court. The probate court had before it a substantial financial estate, reflected in the record to be approximately $218 million, and the petition before it alleged that $23.5 million had previously been "loaned" to a relative and that another $17.5 million was about to be transferred from one financial entity to another for the benefit of this same relative. Hawley acted as any conscientious, qualified

attorney, particularly one serving as the general conservator of the county, would likely do under the circumstances; that is, he accepted the probate court's appointment as temporary guardian and conservator and maintained the financial status quo until the probate court could judicially ascertain whether Ms. Bashinsky possessed the mental capacity to do whatever she wanted with her money and her estate. When this Court subsequently ordered the probate court to have Hawley account for Ms. Bashinsky's funds and property, Hawley <u>once again acted in good faith based on both the order appointing him as well as the order requiring final settlement</u>.

Although the order appointing Hawley as temporary guardian and conservator was entered in error and was subsequently declared void by this Court, the purpose of a temporary guardianship and conservatorship for any alleged incapacitated person (or a minor) is to preserve the health and welfare of the person and/or to preserve his or her estate from loss, waste, or misspending prior to a hearing on a petition for a permanent guardianship and conservatorship can be conducted. Erskine's argument is that because Hawley should have never been appointed as temporary guardian and conservator after a defective hearing, he should not be

compensated for his work. Although this Court disagreed with the probate court that a proper hearing had been held to establish that an emergency existed that warranted the judicial creation of a temporary estate for an incapacitated person, Hawley was not in a position to question the probate court; rather, he acted pursuant to a probate court order that was valid on its face in a pending proceeding involving discovery and preparation, a duty to protect Ms. Bashinsky and her estate, and time necessarily spent in court. Later, this Court essentially ordered Hawley to finalize his work as a fiduciary on behalf of Ms. Bashinsky by appearing before the probate court and filing his accounts and vouchers for a final settlement of his actions as temporary conservator. This was mandated, despite the fact that this Court had determined that there had been no proper hearing, affording Ms. Bashinsky the statutory and due-process safeguards to which she was entitled, to establish the existence of emergency circumstances necessitating a temporary guardianship and conservatorship. When Hawley was appointed, the probate proceedings entailed requests for both temporary and permanent guardianships and conservatorships, and by accepting the appointment he submitted personally to the continuing

52

jurisdiction of the probate court in any proceeding relating to Ms. Bashinsky's estate. § 26-2A-141, Ala. Code 1975.

I submit that to disallow fees for a conservator who acted pursuant to a court order that was valid on its face would ignore the reality that there was an ongoing proceeding in the probate court. It was neither the duty, nor the office, of Hawley to question the validity of the order at the time of his appointment or during the duration of his services; rather, it was Hawley's duty as both an officer of the court and as an appointee of the court to act professionally to protect Ms. Bashinsky's best interests regarding her property.

It goes without saying that disallowing such earned fees could make it difficult for probate judges to find willing counsel and other persons to serve as court representatives, guardians ad litem, medical personnel, fiduciaries, and in other roles for minors and incapacitated persons in AUGPPA proceedings. If such earned fees are not properly awarded in a proper judicial proceeding, <u>then such fees should equitably be assessed against the losing party</u> -- <u>not in essence against the appointed lawyer</u>. In this regard, I add that I agree completely with that portion of Chief Justice Parker's special writing noting that "when this

case returns to the probate court, Hawley is free to argue that he is entitled to compensation as a trustee in invitum." ___ So. 3d at ___.

Of course, this does not mean, however, that court-appointed guardians and conservators will or should be compensated regardless of the quality of their performance; however, that is clearly not an issue before this Court in this case

### The January 22, 2021, Order

Erskine argues that Ms. Bashinsky's death deprived the probate court of subject-matter jurisdiction to award fees to Guin, the guardian ad litem appointed to represent Ms. Bashinsky in what was then a still pending proceeding on the petition for a permanent guardianship and conservatorship.[16] Erskine argues that Ms. Bashinsky's death ended the necessity for a hearing on whether Ms. Bashinsky was incapacitated or in need of protection -- a point not in dispute. However,

> "[s]ubject-matter jurisdiction is a simple concept:
>
> "'Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings in question belong. The

---

[16]In my opinion, the probate court properly certified the order awarding fees to Guin as final pursuant to Rule 54(b), Ala. R. Civ. P., and Erskine's appeal, insofar as it challenges that order, was timely.

54

principle of subject matter jurisdiction relates to a court's inherent authority to deal with the case or matter before it. The term means not simply jurisdiction of the particular case then occupying the attention of the court but jurisdiction of the class of cases to which the particular case belongs.'

"21 C.J.S. Courts § 11 (2006). In determining a trial court's subject-matter jurisdiction, this Court asks '"only whether the trial court had the constitutional and statutory authority" to hear the case.' Russell v. State, 51 So. 3d 1026, 1028 (Ala. 2010) (quoting Ex parte Seymour, 946 So. 2d 536, 538 (Ala. 2006)). Problems with subject-matter jurisdiction arise if, for example, a party files a probate action in a juvenile court, a divorce action in a probate court, or a bankruptcy petition in a circuit court, because the nature or class of those actions is limited to a particular forum with the authority to handle them. There are, however, no problems with subject-matter jurisdiction merely because a party files an action that ostensibly lacks a probability of merit."

Ex parte Safeway Ins. Co. of Alabama, Inc., 148 So. 3d 39, 42-43 (Ala. 2013).

On October 16, 2020, the probate court appointed Guin to serve as guardian ad litem for Ms. Bashinsky in the pending proceeding on the petition for a permanent guardianship and conservatorship. Section 26-2A-52, Ala. Code 1975, a part of the AUGPPA, provides, in pertinent part: "At any point in a proceeding, a court may appoint a guardian ad litem to represent the interest of a minor or other person if the court

determines that representation of the interest otherwise would be inadequate." (Emphasis added.)

Guin argues that, although Ms. Bashinsky's death mooted McKleroy and Townsend's petition for a permanent guardianship and conservatorship, the probate court still retained subject-matter jurisdiction over collateral matters arising out of the guardianship/conservatorship proceedings. Guin argues that such collateral matters include the award of fees for his service as guardian ad litem.

Section 26-2A-142, Ala. Code 1975, provides:

"(a) If not otherwise reasonably compensated for services rendered, any court representative, attorney, physician, conservator, or special conservator appointed in a protective proceeding and any attorney whose services resulted in a protective order or in an order that was beneficial to a protected person's estate is entitled to reasonable compensation from the estate. The conservator shall be allowed from the estate of the protect[ed] person all reasonable premiums paid on his or her bond and reimbursement of any court costs paid.

"(b) If not otherwise reasonably compensated for services rendered, any court representative, attorney, physician appointed in a guardianship, and any attorney whose services resulted in a guardianship order or in an order that was beneficial to a ward is entitled to reasonable compensation from the estate. The guardian may be

reimbursed from the estate of the ward for any court costs paid.

"(c) Except when the petitioner is related by blood or marriage to the individual who is the subject of the proceeding, if the assets of the estate in a protective proceeding or in a guardianship proceeding are not sufficient to provide reasonable compensation and pay court costs as permitted in subsections (a) and (b), the compensation of any guardian ad litem, court representative, or physician appointed by the court and court costs associated with the petition or motion may be taxed by the court with regard to any particular petition or motion presented to the court to the petitioner as additional costs to the petitioner."

Erskine focuses on the word "estate" in § 26-2A-142(a) and (b), arguing that because no estate was created, Guin is not entitled to any fees.   Again, I disagree.[17] Section 26-2A-31, Ala. Code 1975, sets out the subject-matter jurisdiction of the probate court under the AUGPPA and provides:

"(a) To the full extent permitted by the constitution and as permitted under Article 2 of Chapter 2B of [Title 26], the court has jurisdiction over all subject matter relating to estates of protected persons and protection of minors and incapacitated persons.

_____

[17]Section 26-2A-20(6), Ala. Code 1975, defines "estate" to "include[] the property of the person whose affairs are subject to [the AUGPPA]."

57

"(b) The court has full power to make order[s], judgments, and decrees and take all other action necessary and proper to administer justice in the matters that come before it.

"(c) The court has jurisdiction over protective proceedings and guardianship proceedings.

"(d) If both guardianship and protective proceedings as to the same person are commenced or pending in the same court, the proceedings may be consolidated.

"(e) No provision of [the AUGPPA] shall be construed to void, abate, or diminish the powers or equity jurisdiction, when invoked, heretofore or hereafter granted by statute to certain probate courts."

The statutory grant of subject-matter jurisdiction to the probate court found in § 26-2A-31 is broad. The probate court is granted the "full power to make order[s], judgments, and decrees and take all other action necessary and proper to administer justice in the matters that come before it." § 26-2A-31(b). In Russell v. State, 51 So. 3d 1026 (Ala. 2010), the State filed a condemnation action in a probate court, which entered a final condemnation order. The property owner appealed the order to a circuit court for a trial de novo. The circuit court granted the property owner's motion to dismiss the condemnation proceedings on the ground that the probate court had lacked jurisdiction because indispensable

parties had not been before the probate court. The property owner then filed a motion for an award of litigation expenses and attorney fees. The circuit court denied his request, asserting its lack of jurisdiction. On appeal, we reversed the order denying the motion for expenses and attorney fees, stating:

> "Although the circuit court concluded that it lacked subject-matter jurisdiction over the eminent-domain proceeding, we hold that it nevertheless had jurisdiction over Russell's motion for litigation expenses. Specifically, a court's subject-matter jurisdiction 'is derived from the Alabama Constitution and the Alabama Code.' Ex parte Seymour, 946 So. 2d 536, 538 (Ala. 2006). In determining a court's subject-matter jurisdiction, 'we ask only whether the trial court had the constitutional and statutory authority' to hear the case. Seymour, 946 So. 2d at 538. Here, the plain language of § 18-1A-232(a)[, Ala. Code 1975,] provides that, in an eminent-domain action, '[t]he court shall award the defendant his litigation expenses, in addition to any other amounts authorized by law, if the action is wholly or partly dismissed for any reason.' (Emphasis added.) Section 18-1A-232(a) thus provides the circuit court the 'power' to award litigation expenses in this case, even if the action itself was 'dismissed for' lack of subject-matter jurisdiction. See also generally State Dep't of Human Res. v. Estate of Harris, 857 So. 2d 818, 820 (Ala. Civ. App. 2002) ('Alabama follows the "American Rule" regarding the award of an attorney fee; that rule provides for the recovery of an attorney fee if a fee is allowed by statute, by the terms of a contract, or by a "special equity."' (emphasis added)). Russell's motion seeking litigation expenses was, therefore, unaffected by any lack of subject-matter jurisdiction over the eminent-domain action and was

> properly filed after the dismissal of that action. See Williams v. Deerman, 724 So. 2d 18, 21 (Ala. Civ. App. 1998) (stating that a landowner's claim for costs and fees in a condemnation action that has been dismissed does 'not accrue, and the time for ... assertion [of the claim] d[oes] not begin to run,' until the action is dismissed)."

Russell, 51 So. 3d at 1028 (final emphasis added).

Like the statutes in Russell that allowed for the award of fees as a collateral matter, the AUGPPA provides in § 26-2A-142 that the probate court has jurisdiction to award reasonable compensation to a guardian ad litem related to a guardianship and conservatorship proceeding. Additionally, § 26-2A-3, Ala. Code 1975, provides that the principles of law and equity supplement the provisions of the AUGPPA. Therefore, under the "special equity" rule as set out by this Court in City of Birmingham v. Horn, 810 So. 2d 667 (Ala. 2001), attorney fees may be awarded when the efforts of an attorney render a public service or result in a benefit to the general public. Indeed, the original guardian ad litem appointed to represent Ms. Bashinsky in the temporary guardianship and conservatorship proceedings was in fact paid for his services.

Conclusion

In an ideal world, there would be no controversy, everyone would maintain mental capacity for their lifetime, no one would attempt to take advantage of another person, and there would be little need for a Uniform Guardianship and Protective Proceedings Act, much less a probate court to ensure fairness. Unfortunately, we live in a less than ideal world. At issue in this case was whether Ms. Bashinsky was competent and had the capacity to manage her considerable financial estate. When the case was commenced, no one knew how long she would survive or whether she was sufficiently competent to continue to care for her financial security. That is the point where the Probate Court of Jefferson County and the rule of law came in.

For the reasons stated above, I submit that, insofar as it challenges the December 11, 2020, order, Erskine's appeal is due to be dismissed as untimely and that, insofar as Erskine's appeal challenges the January 22, 2021, order, that order should be affirmed on the merits.

I am quite sure that, in retrospect, the learned probate judge would handle the emergency proceedings differently if given a second chance. However, because that is not possible, in closing I seek to condense,

emphasize, and reflect upon the following selected statutory provisions from those set out at length above, recognizing that the probate court was clothed with its equity jurisdiction in the allocation and award of fees and expenses.

First, § 26-2A-2, titled "Rule of construction; purposes," provides, in pertinent part:

"(a) [The AUGPPA] shall be liberally construed and applied to promote its underlying purposes and policies.

"(b) The underlying purposes and policies of [the AUGPPA] are to:

"....

"(2) Promote a speedy and efficient system for managing and protecting the estates of protected persons so that assets may be preserved for application to the needs of the protected persons and their dependents."

Second, § 26-2A-141 provides, in pertinent part:

"By accepting appointment, a conservator submits personally to the jurisdiction of the court in any proceeding relating to the estate which may be instituted by any interested person. … "

And last, § 26-2A-142(a) provides, in pertinent part:

"(a) If not otherwise reasonably compensated for services rendered, any … conservator[] or special conservator appointed in a protective proceeding … is entitled to reasonable compensation from the estate. … "

For the reasons stated, I respectfully dissent in appeal no. 1200401.